531 A.2d 1318

**Phyllis Sachs DIXON**

v.

**Craig A. BENNETT, et al.**

**No. 171, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Oct. 14, 1987.

Harvey M. Lebowitz (Diana Motz, Jay A. Shulman, Ellen L. Hollander and Frank, Bernstein, Conaway & Goldman, on brief), Baltimore, for appellant.

Harold B. Murnane, III (Murnane & O'Neill, on brief), Glen Burnie, for appellees.

Argued before GILBERT, C.J., and BLOOM and ROSALYN B. BELL, JJ.

ROSALYN B. BELL, Judge.

Phyllis Sachs Dixon, appellant, filed suit in the Circuit Court for Anne Arundel County against Craig A. Bennett and CBZ Construction and Management Company. Her complaint was later amended to include A.A. Utility Operations Company. Appellant, an unsecured creditor of Richard B. Rice, alleged that transfers made by Rice to Bennett, CBZ and Utility were fraudulent under the Maryland Uniform Fraudulent Conveyance Act (MUFCA). She sought to recover those assets fraudulently conveyed or damages.

Appellant arrived at her position as an unsecured creditor in a convoluted way. Campanelli, Inc. held a one-half interest in Wincamp Partnership. Campanelli assigned all its rights, title and interest in Wincamp to Rice and W. Dudley Dixon, Trustee. The general partners of Wincamp, Rice, W. Dudley Dixon, Trustee, and William E. Dixon,[1] agreed to indemnify Campanelli, Inc. from all obligations, damages or claims arising out of Wincamp. When Wincamp failed, Campanelli, Inc. was required to pay in excess of $450,000 and at argument was still liable for an additional sum of approximately $400,000. In accordance with the indemnity agreement, that liability created a claim in favor of Campanelli, Inc. against Rice, W. Dudley Dixon, Trustee, and William E. Dixon.

---

1. W. Dudley Dixon is appellant's step-son and William E. Dixon is her husband.

Rice filed a petition for relief under Chapter 7 of the Bankruptcy Code in October of 1982. The permanent bankruptcy trustee was appointed in November of 1982. Rice's discharge was granted in March of 1983. Approximately five weeks later, Campanelli, Inc. assigned the claim against Rice, W. Dudley Dixon, Trustee, and William E. Dixon to appellant for an unspecified consideration. Neither Campanelli, Inc. nor appellant, the assignee, elected to file a claim as an unsecured creditor in the distribution of Rice's bankruptcy estate. The parties agree that the trustee's right to sue to avoid fraudulent transfers expired in November of 1984. Thereafter, appellant brought suit claiming, pursuant to the MUFCA, Md.Com.Law Code Ann. §§ 15–204, 15–205, 15–206, 15–207 (1975, 1983 Repl.Vol., 1987 Cum. Supp.), that Rice or corporations or entities under his direction and control had fraudulently transferred assets to Bennett, CBZ and Utility.[2]

Appellees denied appellant's claim that they had received any fraudulent conveyances from Rice or any Rice entities. They moved for summary judgment contending that appellant's state law claim was barred because the bankruptcy trustee had the exclusive right to bring an action to set aside any alleged fraudulent transfers by Rice. The Circuit Court for Anne Arundel County agreed and granted summary judgment in favor of Bennett, CBZ and Utility.

During the discovery stage of the dispute, appellant sought an order to compel Bennett, Rice's accountant and an appellee here, to produce certain documents. The order

---

**2.** To maintain a suit pursuant to MUFCA, the plaintiff needs to allege that a creditor-debtor relationship exists and that the debtor has fraudulently transferred assets. Md.Com.Law Code Ann. § 15–201 *et. seq.* (1975, 1983 Repl.Vol., 1986 Cum.Supp.). The creditor's right to bring suit under MUFCA is not related to whether the debtor has filed a bankruptcy petition. The remedy may include setting aside or disregarding the conveyance as against some persons. Md.Com.Law Code Ann. §§ 15–209, 15–210 (1975, 1983 Repl.Vol., 1986 Cum.Supp.). An action under MUFCA must be filed within three years from the date it accrues. Md.Cts. & Jud.Proc.Code Ann. § 5–101 (1974, 1984 Repl.Vol., 1986 Cum.Supp.).

was granted. Bennett then moved for a protective order. That motion was granted based upon the accountant-client privilege. On a motion to reconsider, the court conducted, with counsel present, four *in camera* hearings. Appellant's request that a court reporter be present at those hearings was denied. The court then granted appellees' protective order finding that a majority of the documents were privileged because they were used, directly or indirectly, by Bennett in performing accounting work or services.

On appeal, appellant contests both the granting of the summary judgment and the motion for a protective order. Appellant claims that the failure of the bankruptcy trustee to avoid fraudulent transfers within the two-year period provided by federal bankruptcy law does not preclude an unsecured creditor, whose applicable state limitations has not expired, from subsequently bringing a state cause of action against the transferee of property fraudulently conveyed by the debtor. Appellant also claims that the accountant-client privilege does not protect documents either created by or disseminated to third parties or documents prepared in anticipation of a fraudulent scheme in which the accountant participated as a principal. We hold that appellant is not barred from bringing a cause of action based on the state fraudulent conveyance laws once the federal bankruptcy trustee is precluded from suing to recover assets fraudulently transferred by the debtor. In addition, we hold that the Maryland accountant-client privilege cannot be invoked to avoid production of documents prepared in contemplation of a fraud in which the accountant allegedly participated.

## THE BANKRUPTCY CODE

The Bankruptcy Code has been amended several times since its most recent enactment in 1978. Those changes have not substantively affected the application of the Code provisions relevant to this case. Although this case was

subject to the 1982 amendments, we use in this opinion the 1978 Code as a reference point.[3]

Under § 541 of the 1978 Bankruptcy Code, 11 U.S.C. § 541 (1978), the filing of a petition in bankruptcy creates an estate made up of all the property of the debtor. Any action against property of the estate is automatically stayed under § 362 of the Bankruptcy Code, 11 U.S.C. § 362 (1978), until such time as the property is no longer property of the estate.

■ Section 541 defines "property of the estate" as all legal or equitable interests of the debtor in property. 11 U.S.C. § 541(a)(1) (1978). Here, Rice retained an equitable interest in any property fraudulently transferred since equitable title in property fraudulently transferred remains in the transferor. *In re Mortgage America Corp.*, 714 F.2d 1266, 1275 (5th Cir.1983). Section 541(a)(3) of the Bankruptcy Code provides that "interest in property that the trustee *recovers* under [his avoidance powers]" becomes property of the estate. 11 U.S.C. § 541(a)(3) (1978) (emphasis added). Neither appellant nor appellees challenge the lower court's finding that the property presently being held by appellees was never recovered by the trustee and is therefore not property of the estate.

The trustee possessed as distinct property of the estate the "right to sue" to recover fraudulently transferred assets because the phrase "all legal and equitable interests" also includes "rights of action." *In re Mortgage America Corp.*, 714 F.2d at 1274. The trustee's right to pursue an action to recover transferred property is governed by §§ 548 and 544(b) of the Bankruptcy Code. 11 U.S.C. §§ 548, 544(b) (1978). Section 548 is the federal fraudulent transfer avoidance power. Section 544(b) vests in the trustee the rights of unsecured creditors of the debtor. Both sections are subject to the time limitations of 11 U.S.C.

---

**3.** We discuss the pre–1978 Bankruptcy Acts because appellees have relied on case law dating back to the 1870s.

§ 546(a) (1978). Section 546(a) limits the bringing of an action or proceeding under either §§ 548 or 544 to the earlier of two years after the appointment of a trustee or the time the case is closed or dismissed. § 546(a).

In the case *sub judice*, the permanent trustee was appointed on November 15, 1982. Thus, the trustee had until November 15, 1984 to bring suit to set aside the fraudulent conveyances. Appellees concede that, because the trustee failed to take action against the conveyance within the time period proscribed under § 546(a), the trustee was barred under that statute from bringing suit to recover the property for the estate.

Appellees do claim that the lower court was correct in its finding that the power to set aside fraudulent transfers rests exclusively with the bankruptcy trustee. Therefore, they argue that § 546(a), which after two years bars the trustee from bringing suit to avoid the transfers, also precludes *any* attempt by an unsecured creditor to recover the fraudulently transferred assets. With this we disagree.

#### —Trustee's Statute of Limitations Before 1978—

The precept of the trustee's statute of limitations, now codified in § 546(a), can be traced back to the Bankruptcy Act of 1867. A brief examination of the textual and substantive changes made between 1867 and 1978 reveals that, under pre–1978 bankruptcy law, the trustee's limitation period was coterminous with or greater than the statutory period allowed for creditors under state statutes of limitations. Thus, the unsecured creditor's right to set aside fraudulent conveyances would always be preempted by the trustee's right.

The Bankruptcy Act of 1867 vested in the assignee title to "all the property conveyed by the bankrupt in fraud of his creditors." Bankruptcy Act of 1867, Ch. 176, 14 Stat. 517, § 14, repealed by Act of June 7, 1878, 20 Stat. 99.[4] Under

---

4. The assignee under the 1867 Bankruptcy Act was the equivalent of the current-day trustee.

§ 2 of the Act, the right to avoid fraudulent transfers was vested in the assignee for a period of two years, after which all rights to file suits affecting property were barred. This bar encompassed the right of creditors to sue. Section two of that Act provided:

"[N]o suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property and rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years from the time the cause of action accrued, for or against such assignee...."

Bankruptcy Act of the Act of 1867, § 2.

Under that provision, all suits "by ... the assignee" or "against any person claiming an adverse interest, touching the property and rights of property" not brought within the two-year period were forever barred. Because the assignee had the exclusive right to recover fraudulent property during the statutory two-year period, *Glenny v. Langdon*, 98 U.S. (8 Otto) 20, 27–28, 25 L.Ed. 43 (1878), the unsecured creditor was precluded from bringing suit in his own name to recover the property. In addition, because the fraudulent transferee was a "person claiming an adverse interest" in the property, the unsecured creditor was also denied the opportunity to bring suit against the transferee.

This two-year limitation was consistent with one of the basic principles underlying the bankruptcy law, the speedy disposition of the bankrupt's assets. *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 22 L.Ed. 636 (1874). In *Bailey*, the Court said:

"Congress has said to the assignee, you shall commence no suit two years after the cause of action has accrued to you, nor shall you be harassed by suits when the cause of action has accrued more than two years against you. Within that time the estate ought to be nearly settled up and your functions discharged, and we

close the door to *all litigation* not commenced before it has elapsed." (Emphasis added.)

*Bailey*, 88 U.S. (21 Wall.) at 347.

The next major revision of the Bankruptcy Act occurred in 1898. Section 11(d) of that Act provided that "[s]uits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed." Bankruptcy Act of 1898, Ch. 541, 30 Stat. 544 (amended 1938). An estate was "closed" not when the bankrupt was discharged, but rather when the final decree approving the trustee's account and discharging him was entered. 1A *Collier on Bankruptcy*, ¶ 11.12(2) at 1212 (14th ed. 1978). As appellant correctly points out, years could pass before an estate was closed, and the trustee's cause of action to recover fraudulent conveyances would still not expire for an additional two years. As a result, the likelihood that an unsecured creditor would "beat" the statute of limitations under a state law claim was virtually eliminated.

In *Bilafsky v. Abraham*, 183 Mass. 401, 67 N.E. 318 (1903), the estate was reopened more than two years after it had been closed because it had not been fully administered. The issue was whether the trustee was barred by § 11(d) from bringing suit upon a right of action belonging to the estate. The Court, in upholding the trustee's right to institute a cause of action said:

"It seems to us that the word 'closed' in this provision means properly and finally closed, and if, upon proceedings in the court of bankruptcy, it appears that the order closing the estate was made under a mistake, and that an order should be entered reopening the estate for the purpose of having it further administered, it should be held, after the reopening, that the estate is open for the purpose of bringing suits, even though more than two years have elapsed since the entry of the original erroneous order. In this way, we think, effect will best be

given to the purpose of the Congress to provide for a full and proper administration of the estates of bankrupts."

*Bilafsky,* 67 N.E. at 319.

Under § 546(a) of the 1978 Act, this would not be the case. Section 546(a) restricts the period for bringing suit to the earlier of two years after the trustee is appointed or the closing of the estate. Therefore, regardless of the later reopening of the estate, the trustee ordinarily cannot institute a cause of action after two years have elapsed from the date of the trustee's appointment. *Rameker v. Berning Garage, Inc.,* 39 B.R. 902, 904 (Bankr.W.D.Wis.1984); 4 *Collier on Bankruptcy,* ¶ 546.02 at 546–9 (15th ed. 1987).

In 1938, the Bankruptcy Act of 1898 was amended by the Chandler Act. Section 11(e) of that Act allowed the trustee to:

"[W]ithin two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate...."

Chandler Act, 52 Stat. 840 (1938).

Section 11(e) gave the trustee the power to invoke any state or federal law, including fraudulent conveyance law, under which an actual creditor might have attacked the transaction. The Chandler Act eliminated the closing of the estate as a time factor and extended the period beyond the two-year zone if an applicable state law gave a longer period. 1 Garrard, *Fraudulent Conveyances and Preferences* 188 (1940). Therefore, if the trustee's cause of action arose under the state fraudulent conveyance law and if the state period of limitation expired *after* the two-year period of § 11(e), then the state statute of limitations applied. *Banister v. Solomon,* 126 F.2d 740, 742 (2nd Cir.1942); 1A

*Collier on Bankruptcy* ¶ 11.13 at 1217 (14th ed. 1978), and cases cited therein.[5]

### —Trustee's Statute of Limitations Under the 1978 Code—

Appellees argue that the bankruptcy trustee has the exclusive right to set aside fraudulent transfers. Therefore, they contend that, when the trustee's right to bring a suit expired under § 546(a), all claims under both the bankruptcy and state law were thereafter barred. In the case *sub judice,* the trustee never invoked the right, under either the bankruptcy or state law, to avoid the transfers that appellant now seeks to set aside under MUFCA. Despite that fact, appellees contend that the expiration of the time period of § 546(a) now precludes appellant from bringing her state law claim. We disagree.

The plain language of § 546(a) belies appellees' argument. That provision is limited to specific Bankruptcy Code actions which for a limited period create avoidance powers exclusively in the bankruptcy trustee. Section 546 provides:

"(a) An action or proceeding under section 544, 547, 548, or 553 of this title may not be commenced after the earlier of—

(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and

(2) the time the case is closed or dismissed."

11 U.S.C. § 546 (1987).[6] Had the trustee sought to bring the suit, he or she would have had to proceed under § 544(b) or § 548. The trustee did not do so within the time specified by § 546(a). Appellant, however, brought suit against appellees under MUFCA. She did not bring suit under §§ 544, 545, 548 or 553 of the Bankruptcy Code. Section 546(a) does not apply to appellant.

---

**5.** The one condition in bringing a state claim is that the state law statute of limitations must not have expired at the time of the filing of the petition in bankruptcy. Bankruptcy Act of 1938, § 11(e).

**6.** In 1984, the "and" following "title" under (a)(1) was changed to "or." This did not affect the substance of the provision.

A similar issue arose in *In re Britton*, 66 B.R. 572 (Bankr.E.D.Mich.1986). The question before the bankruptcy court in *Britton* was whether the debtor could avoid a contract which could have been but was not avoided during bankruptcy. The trustee's right to avoid the contract pursuant to the Bankruptcy Code provisions had expired in accordance with § 546(a). Subsequently, the debtor brought suit pursuant to a state law cause of action against his creditor to avoid the contract. The creditor claimed that the debtor's suit was barred because the trustee's right to avoid expired under § 546(a) of the Bankruptcy Code. The court rejected the creditor's argument that the provision of the Code that governed the trustee's time to avoid was also applicable to the debtor for two reasons. The first reason stated by the court was that § 546(a) limits the bringing of avoidance actions by trustees and the plaintiff was a debtor, not a trustee. *Britton*, 66 B.R. at 575. Secondly,

"[B]y its own terms, § 546 applies only to actions brought under §§ 544, 545, 547, 548 and 553. This lawsuit does not arise under any of those sections. Instead, it is an action to vindicate an independent state-law created right which was and is cognizable without the filing of a bankruptcy petition. Only causes of action arising under the avoidance powers of *the trustee* are barred by the two-year statute of limitations."

*Britton*, 66 B.R. at 575 (emphasis in original). Similarly, in the case *sub judice*, the appellant is not a trustee and her cause of action did not arise under the trustee's avoidance powers. She brought her suit to avoid transfers received by the appellees pursuant to MUFCA which creates rights in creditors to set aside or disregard fraudulent conveyances that are independent of the trustee's right under the Bankruptcy Code.

■ This Court found no case law or language in the Bankruptcy Code itself which prevents an unsecured creditor from bringing a state cause of action in state court once the trustee's two-year time limitation has passed. What the Bankruptcy Code *does* prohibit is a suit by an unsecured

creditor to recover against fraudulent transferees after the debtor files a bankruptcy petition and until the trustee's cause of action expires. On the other hand, before the bankruptcy petition is filed and after the expiration of the trustee's cause of action, a fraudulent transferee may be subject to suit by an unsecured creditor under state law as long as its statute of limitations has not yet expired.

When Congress was faced with the task of rewriting the bankruptcy law in 1978, it had before it § 11(e) of the 1938 Bankruptcy Act. That section, as written and interpreted, not only provided the trustee with the two-year limitation but also gave the trustee the power to invoke a plethora of state and federal statutes along with their statutes of limitations. As a result, the trustee's statutory time period could always be either as long or longer than that of the unsecured creditor. Section § 546(a) no longer affords the trustee the benefit of the state law statute of limitations. If Congress had wanted to continue to extend the trustee's statutory time period and in turn restrict the unsecured creditor's ability to maintain an independent cause of action, it could have done so. We cannot do what Congress has chosen not to do. Therefore, we hold that, once the trustee's statutory time period has expired, an unsecured creditor can bring an action against a fraudulent transferee under state law provided the state statute of limitations has not yet expired.

Appellees rely heavily on two cases decided under the 1867 Bankruptcy Act. In *Glenny v. Langdon*, 98 U.S. (8 Otto) 20, 25 L.Ed. 43 (1878), the unsecured creditor attempted to invoke the assignee's power under the Bankruptcy Act to avoid fraudulent transfers because the assignee refused to do so. At the time, the assignee's cause of action was still viable. The court held that the creditor's suit was barred because the cause of action created by the Bankruptcy Act was expressly vested solely in the assignee who still had a viable cause of action.

In the second case, *Trimble v. Woodhead*, 102 U.S. (12 Otto) 647, 26 L.Ed. 290 (1880), an unsecured creditor at-

tempted to avoid a fraudulent transfer subsequent to the expiration of the assignee's cause of action. The creditor did not have a state law right to avoid fraudulent transfers and attempted to use the assignee's powers under the Bankruptcy Act. The Court held that failure of the assignee to sue within two years did not transfer the assignee's right of action to the unsecured creditor.

We have no argument with appellees' interpretation of either the *Glenny* or *Trimble* case. What we do reject is their relevance and applicability to the case *sub judice*. Both cases were decided under the 1867 Bankruptcy Act which is substantially different from the 1978 Code governing this case.

As discussed earlier, one of the most important purposes of the 1867 Act was the speedy disposition of the bankrupt's assets. Consistent with that policy, § 2 of the Act prohibited the institution of a suit "by or against such assignee, *or* by or against any person claiming an adverse interest ... unless the same shall be brought within two years...." Bankruptcy Act of 1867, § 2 (emphasis added). Under the 1867 Act, this appellant would also have been barred from maintaining her state claim against the fraudulent transferee because it was "by ... any person claiming an adverse interest," "against any person claiming an adverse interest" and more than two years had passed. Significantly, § 546(a) deals only with the powers of the *trustee* to bring a cause of action under specific provisions of the Bankruptcy Code.

The Court in *Glenny* was not faced with the issue of whether a suit could be brought once the statutory two year period had passed because at the time the assignee's cause of action was still viable. In *Trimble,* the Court's opinion confirms the proposition that § 2 barred *all* suits not brought within the two-year period. *Bailey v. Glover,* 88 U.S. (21 Wall.) 342, 347, 22 L.Ed. 636 (1874).

The other cases appellees use in support of their argument do not conflict with appellant's right to maintain a

state cause of action once the trustee's § 546(a) time limitation has run. First, the cases hold that the trustee has the exclusive right to bring suit under federal bankruptcy law during the time he has a viable cause of action. *Glenny v. Langdon,* 98 U.S. (8 Otto) 20, 27–28, 25 L.Ed. 43 (1878); *In re Daniele Laundries, Inc.,* 40 B.R. 404, 408 (Bankr.S.D.N. Y.1984). Second, the cases state that the trustee has the exclusive right to invoke his or her federally-created avoidance powers within the statutory period. If the trustee fails to take advantage of that federally created right, it terminates rather than devolving on the individual creditor for their own use. *Trimble v. Woodhead,* 102 U.S. (12 Otto) 647, 649–50, 26 L.Ed. 290 (1880). Here, appellant is proceeding under an independent cause of action under state law. Finally, the cases hold that when the trustee has a viable cause of action to set aside fraudulent conveyances, an individual creditor cannot, under any circumstances, sue to do the same. *In re MortgageAmerica Corp.,* 714 F.2d 1266, 1275–76 (5th Cir.1983). Here, the trustee no longer had a viable cause of action. Those holdings are accurate statements of the law, but are not inconsistent with our decision here today.

We are mindful of the fundamental bankruptcy policies of orderly liquidation and equality among creditors. The Bankruptcy Code accomplishes this through a series of interrelated provisions. When a debtor files a petition in bankruptcy, a stay of litigation, which may affect or interfere with the property of the estate, as defined by § 541, becomes effective. 11 U.S.C. § 362. This automatic stay continues until property is no longer property of the estate. 11 U.S.C. § 362(c). The trustee has the exclusive right to bring suits on behalf of the estate for up to two years following his or her appointment. 11 U.S.C. § 546(a). The trustee gathers the assets which are property of the debtor and property of the estate and distributes them to the creditors in accordance with the Bankruptcy Code preference scheme. These provisions work to prevent creditors from pursuing their own remedies against the debtor's

property and provide an orderly liquidation procedure in which all creditors are treated equally. Comm. on the Judiciary, S.Rep. No. 989, 95th Cong. 2d Sess., at 49 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5835.

Our holding today does not interfere with this scheme.[7] Consistent with the Bankruptcy Code, an unsecured creditor's cause of action is precluded once the bankruptcy petition is filed until after the trustee's right to bring suit expires. During that time, the bankruptcy provisions cited above insure that the fundamental bankruptcy policies are met. Appellees ask us to prohibit an unsecured creditor from using the remedies granted by the State to protect his or her rights. They would have us do this regardless of whether the fraudulent conveyance is discovered before or after the trustee's powers have expired. To do so would only serve to shield the recipients of fraudulent transfers at the expense of the unsecured creditor.

Our holding is in no way intended to encourage or permit unsecured creditors who discover a fraudulent transfer to sit back and wait out the running of the trustee's time limitation and then bring a state cause of action for their own benefit. We do not foresee the circumstances in which this case arose becoming a common occurrence. In the first place, various provisions of the Bankruptcy Code are designed to expose any attempts by debtors to convey fraudulently and to conceal assets. Section 727 provides for denial of discharge if the debtor disposes of his or her property in an attempt to defraud creditors. 11 U.S.C. § 727 (1978). In addition, a trustee or creditor can petition for revocation of the discharge under § 727(e) if the fraud is discovered after the debtor is discharged. The trustee is given broad investigative powers under 11 U.S.C. § 343 (1978) and 11 U.S.C. § 704 (1978) and is required to file a

---

7. Appellant is not barred by the automatic stay provision because the fraudulent transfers never became property of the estate and the trustee failed to exercise his right to avoid those transfers in a timely manner. *See supra* at p. 625–626.

bond with the bankruptcy court to insure "faithful perform-ance of [his] official duties." 11 U.S.C. § 322(a) (1978).

Secondly, the State court has the equitable power to take appropriate steps, including the power to bar the suit if it discovers that the creditor was aware of the transfers and attempted to withhold it from the trustee. Moreover, as-suming appellant does establish the existence of a fraudu-lent transfer in violation of state law, the court has great latitude in fashioning a remedy.

> "While a complainant is not entitled to relief beyond the general scope and object of the bill ... the court is left free to adopt any mode by which it can most readily and effectually administer that relief which the equity of the case may require."

*Terry v. Terry*, 50 Md.App. 53, 61, 435 A.2d 815 (1981), quoting *McKeever v. Washington Heights Realty Corp.*, 183 Md. 216, 224, 37 A.2d 305 (1944). We see no reason why, in an appropriate case, the State court in finding for the unsecured creditor could not establish a constructive trust for the benefit of all the debtor's creditors.[8]

### —Discharge of the Debtor—

Although the essence of the lower court's opinion was the exclusivity of the trustee's powers to avoid fraudulent conveyances, the court found that appellant was "precluded from individually suing to set aside a fraudulent conveyance subsequent to the debtor's discharge in bankruptcy." We, therefore, find it necessary to discuss briefly the effect of the debtor's discharge on appellant's right to bring a cause of action against the fraudulent transferee once the trust-ee's two-year time limitation has expired.

---

8. Conceivably, a state court could set aside a fraudulent conveyance and direct its return to the debtor's estate if, as in this case, the bankruptcy proceeding is still open. We express no opinion on what would occur if the trustee did not wish to administer the property if he or she concluded it was a liability rather than an asset.

■ The discharge provision of the Bankruptcy Code, 11 U.S.C. § 524, consistent with fundamental bankruptcy policy, provides the debtor with a fresh start free from the burdens of preexisting liabilities. Under § 524, the discharge only (i) extinguishes *personal* liability of the *debtor;* and (ii) prevents creditors whose claims arose pre-bankruptcy from any actions to impose *personal* liability on the *debtor.* 11 U.S.C. § 524 (1978). Section 524(e) expressly provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." § 524(e).

Under § 16 of the Bankruptcy Act of 1898, Ch. 541, 30 Stat. 544, 550 (1898), the limitation of discharge provision restricted actions to those against co-debtors, guarantors, or other sureties. The language of § 524(e) of the 1978 Bankruptcy Code reveals a congressional intent to broaden the rights of creditors, by preserving their actions against third parties and their property, and to restrict the effect of a discharge solely to a release of the *personal* liability of the debtor.

In *Kathy B. Enterprises, Inc. v. United States,* 779 F.2d 1413 (9th Cir.1986), a debtor fraudulently transferred assets to a third party. The debtor was eventually discharged. Subsequently, the Internal Revenue Service attempted to collect delinquent taxes owed by the debtor by seizing the proceeds the third party was receiving from the sale of the debtor's assets. The I.R.S. claimed that it could collect the taxes in this way because under Illinois law the transfers had been fraudulent. The third party argued that the debtor's discharge barred the I.R.S.'s cause of action. The Court, relying on the change in the statutory language, held that under § 524(e) the I.R.S. could bring a cause of action against a fraudulent transferee despite the debtor/taxpayer's discharge. *Kathy B.,* 779 F.2d at 1415. We agree with the 9th Circuit. In the case *sub judice,* appellant did not seek to impose personal liability on the debtor but brought her cause of action against the fraudulent transferee. We

believe appellant's claim is precisely the type contemplated by the expanded scope of § 524(e).

## PRODUCTION OF DOCUMENTS, THE ACCOUNTANT–CLIENT PRIVILEGE

During the course of the lawsuit, appellant sought an order compelling production of documents by Bennett. After a hearing, the court granted appellant's motion to compel and ordered the documents to be produced within 20 days. Subsequently, Bennett sought a protective order which the court granted after conducting an *in camera* review of the documents. The trial judge found that "although many of the documents contained in Defendant Bennett's files were generated, created or prepared by third parties, or disseminated to third parties, or received from third parties, the documents are nevertheless privileged, because they were used, directly or indirectly, by Defendant Bennet [sic] in performing accounting work or services."

Appellant claims that the accountant-client privilege only protects documents which are confidential communications between the client and the accountant and are generated by the accountant from information received by the accountant from his client. She argues that the trial judge erroneously found that communications disseminated to others or documents obtained from third parties are privileged. Appellant also claims that the documents should be produced under a fraud exception. She posits that the privilege is lost once the accountant becomes a participant with the client in the fraud.

Section 9–110 provides as follows:

"(a) **Privilege.**—A certified public accountant, public accountant, or any person employed by him may not disclose the contents of any communication made to him by a person employing him to examine, audit, or report on any book, record, account, or statement nor may he disclose any information derived from the person or material in rendering professional services unless the person

employing him or his personal representative or his successor in interest permits it expressly.

(b) **Exception.**—This privilege does not affect the criminal laws of the State or the bankruptcy laws."
Md.Cts. & Jud.Proc.Code Ann. § 9–110 (1974, 1984 Repl. Vol., 1987 Cum.Supp.).

The first issue raised by appellant in her brief deals with an interpretation of the scope of the accountant-client privilege as defined by the statute above. In contrast with appellant, Bennett argues that the statute forbids disclosure of communications made to the accountant by his client and information derived from the person or material, regardless of where the information or material originated. Since we will hold that the fraud exception to the accountant-client privilege applies to the case *sub judice,* and since the court refused to permit the hearings to be reported, we need not and in fact cannot reach this issue.

This Court is faced directly for the first time with the applicability of the fraud exception to the accountant-client privilege.[9]  Federal courts have frequently held that communications that would otherwise be protected by the attorney-client privilege are not protected if they involve client communications in furtherance of contemplated or ongoing criminal or fraudulent conduct. *Clark v. United States,* 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d 1032, 1038 (2d Cir.1984); *United States v. Horvath,* 731 F.2d 557, 562 (8th Cir.1984). The Courts have also held that such communications are properly excluded from the scope of the privilege even if the attorney is unaware that the advice is sought in furtherance of such an improper purpose. *Clark,*

---

**9.** In *Lewis v. Capital Mortgage Investments,* 78 F.R.D. 295 (D.Md.1978), a Maryland case brought in federal court, plaintiff claimed, among other things, that the accountant-client privilege did not apply where a conspiracy between an accountant and client to defraud a third party is alleged. The federal court declined to base its ruling on that argument because it found no Maryland cases construing the State privilege. *Lewis,* 78 F.D.R. at 312.

289 U.S. at 15, 53 S.Ct. at 469; *Horvath,* 731 F.2d at 562; *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1038. The Court in *In re Grand Jury Subpoena Duces Tecum* said:

> "The rationale for the exclusion is closely tied to the policies underlying these privileges. Whereas confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered 'sound.' Rather advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection."

*In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1038.

The rationale supporting the Federal repudiation of the attorney-client privilege under fraudulent circumstances is equally persuasive when applied to the accountant-client privilege. Communication between an accountant and a client in furtherance of fraudulent or unlawful ends in no way serves to promote informed and intelligent financial advice.

The common law did not recognize a testimonial privilege affecting communications between an accountant and his client. Only a few states have adopted an accountant-client privilege statute; Maryland is one of them. Our courts have had little opportunity to interpret the scope and applicability of the accountant-client privilege. The recognition of a privilege creating an exception to the general rule of testimonial compulsion evidences a strong public policy in support of accountant-client confidential communications. Nevertheless, unlike the virtually absolute privilege granted the lawyer-client privilege, the priest-penitent privilege and the doctor-patient privilege,[10] the accountant-client privilege is by statute subject to the exceptions affecting "the crimi-

---

**10.** *See* Md. Health-Gen.Code Ann. § 4–301 (1982, 1987 Cum.Supp.).

nal laws of the State or the bankruptcy laws." [11]   § 9–110(b).   We do not propose to grant greater protection to the latter privilege than that recognized for the former relationships.

In *In re: A Special Investigation No. 202,* 53 Md.App. 96, 452 A.2d 458 (1982), the grand jury for Baltimore City issued a subpoena duces tecum to an accountant who performed services for a joint venture under investigation. The principal owners of the joint venture were granted an order quashing the subpoena based on the accountant-client privilege.

In vacating the order quashing the subpoena duces tecum, we said:

> "It seems clear to us that the accountant/client privilege, as enacted, was intended to protect the expectation of privacy of individuals in matters involving contracts, domestic disputes, and other civil and equity controversies; but that it did not seek to create an expectation of privacy involving possible violations of the criminal or bankruptcy laws of the State.   We do not agree that the Legislature intended to create an absolute privilege for accountants with the sole exception that the privilege could not be invoked to prevent testimony or evidence about the counseling of the commission of a crime."

*In re: A Special Investigation No. 202,* 53 Md.App. at 103, 452 A.2d 458.

Generally, in an effort to discover the purpose, aim or policy behind a statute, we look to the plain meaning of the words.   But our inquiry does not always end there.   Statutes are also to be construed reasonably with reference to the legislative purpose to be accomplished.   The real legislative intention should prevail over the intention indicated by

---

**11.**   The lower court stated that the case *sub judice* is not a bankruptcy matter covered by the statutory exclusion.   Appellant did not challenge that determination then and does not raise it on appeal; therefore, we do not address that possibility.

the literal meaning. *Kaczorowski v. Mayor of Baltimore,* 309 Md. 505, 516, 525 A.2d 628 (1987).

We believe that the same policy considerations underlying the decision to invalidate the accountant-client privilege in the face of potential criminal violations apply when the client may be involved in the perpetration of a fraud. The object of the accountant-client privilege is to create an atmosphere in which the client can feel free to discuss highly confidential and personal financial details with his accountant. Its purpose was not to enable either the client or the accountant to use it as a shield when charged with perpetrating a fraud in violation of the laws of the State. An even stronger case is made when, as here, it is alleged that the accountant was an active participant in the fraudulent transactions.

To overcome a claim of privilege using the fraud exception, the seeker of the documents does not have to prove that a fraud has actually taken place. What is required is simply a prima facie showing that the advice related to the documents sought has been obtained in furtherance of a fraudulent activity, *Clark,* 289 U.S. at 15, 53 S.Ct. at 469; *Horvath,* 731 F.2d at 562, or the presentation of a reasonable basis for believing that the objective was fraudulent. *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1039. In other words, the party challenging the legitimacy of the accountant-client privilege must introduce sufficient evidence to establish the elements of the violation. *In re Friedman,* 436 F.Supp. 234 (D.Md.1977); 32A C.J.S. *Evidence* § 1016 (1964 & Supp.1987). The burden then shifts to the responding party to rebut the prima facie case. *District Heights Apartments, Section D–E, Inc. v. Noland Co.,* 202 Md. 43, 50, 95 A.2d 20 (1953). *In re Grand Jury Subpoena Duces Tecum,* 731 F.2d at 1039. In the case *sub judice,* Dixon alleges several violations of the Maryland Uniform Fraudulent Conveyances Act, Md. Com.Law Code Ann. §§ 15–204, 15–205, 15–206, 15–207 (1975, 1983 Repl.Vol., 1987 Cum.Supp.). On remand, the

trial judge will decide whether appellant has made a prima facie showing as to those allegations.

As a final note, even if we had held that the trial court had not erred in its ruling on the applicability of the accountant-client privilege, there would be sufficient cause to remand. Under Rule 1085, we cannot "ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court...." In this case, the lower court denied appellant's motion to have a court reporter present to record the *in camera* review proceeding. Without such a record, it is impossible for us to evaluate the validity of the court's finding of privilege.

JUDGMENT VACATED.

CASE REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY APPELLEES.