[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE DEFENDANT ALLENIR'S MOTION FOR SUMMARY JUDGMENT AND TO DISCHARGE A LIS PENDENS
The Bank of New Haven (hereinafter "plaintiff") filed a complaint against James and Emira Rinella (hereinafter "Rinellas") on March 14, 1991, seeking damages for default on a demand note executed by the Rinellas in favor of the plaintiff. On August 22, 1991, plaintiff filed a motion to cite in the Allenir Investment Corporation (hereinafter "Allenir") as an additional party defendant.
Plaintiff filed an amended twelve count complaint against the Rinellas and Allenir on January 7, 1993. Counts two, three, eight and nine of plaintiff's amended complaint, the only counts presently at issue, are directed against Mrs. Rinella and Allenir. Each of these counts alleges a fraudulent conveyance by Mrs. Rinella. Plaintiff alleges that on June 6, 1984, the Rinellas executed a demand note payable to the plaintiff for the principal sum of $100,000. Plaintiff further contends that demand was made upon the Rinellas for payment on October 3, 1990, and that the note remains unpaid to date.[1]
Plaintiff also alleges that at the time of the execution of the note, Mrs. Rinella was the owner of a parcel of real property located in Orange, Connecticut (hereinafter "property"). The complaint states that on August 13, 1986, Mrs. Rinella transferred the property to Mary Winters and then Winters immediately transferred the property to Allenir. Plaintiff asserts that both transfers were made "with the intent to thereby defraud the plaintiff and prevent it from securing payment to her indebtedness."
On October 15, 1992, plaintiff caused a lis pendens to be filed against the property, pursuant to General Statutes 52-325. Mrs. Rinella filed a petition for bankruptcy on May 6, 1993, and received a discharge in bankruptcy on August 20, 1993. On January 11, 1994, Allenir filed a motion for summary judgment only as to CT Page 1942 the claims against Mrs. Rinella and Allenir, and a motion to discharge the lis pendens filed by the plaintiff on the property transferred to Allenir. Allenir filed an accompanying memorandum of law in support of these motions. On January 21, 1994, plaintiff filed a memorandum in opposition to Allenir's motions. On January 24, 1994, oral arguments were presented to the court on Allenir's motions. On this date Allenir filed a memorandum in response to plaintiff's memorandum in opposition and plaintiff filed a supplemental memorandum in opposition. Subsequent to the oral arguments, Allenir filed a supplemental memorandum in support of the motions notifying the court of a recent case, FDIC v. Cortina, United States District Court, Docket Number 5:91CV-00438 (November 15, 1993, Magistrate Eagan), discovered by counsel after oral arguments. On February 3, 1994, plaintiff filed a second supplemental memorandum in opposition to Allenir's motions.
Allenir moves for summary judgment and to discharge the lis pendens on the ground that the debt upon which plaintiff seeks to collect has been discharged under the provisions of the United States Bankruptcy Code. Allenir argues that Mrs. Rinella's discharge in bankruptcy extinguishes the debt upon which plaintiff is seeking to collect and thus plaintiff may no longer maintain the present action against Allenir.
Allenir asserts that the issue is whether the plaintiff is a secured party, because only a secured party may pursue a third-party to collect on the pre-petition liabilities of a discharged debtor. Allenir further asserts that plaintiff's filing of the lis pendens serves only as notice of plaintiff's fraudulent conveyance suit and is not the equivalent of an attachment on the debtor's interest in the property allegedly fraudulently conveyed. Accordingly, plaintiff's fraudulent conveyance action against Allenir cannot proceed because the debtor has been discharged in bankruptcy and plaintiff failed to file an attachment or obtain a judgment lien prior to the debtor's petition in bankruptcy.
Plaintiff objects to Allenir's motions on the ground that a creditor may pursue an in rein, fraudulent transfer action against a third party subsequent to the debtor's discharge in bankruptcy, since such an action does not attempt to impose personal liability on the debtor. Relying on 524 of the Bankruptcy Code, plaintiff argues that the discharge does not eradicate the debt, but merely serves to protect the debtor from personal liability on the debt. Plaintiff attempts to distinguish a creditor's pursuit of personal liability against the debtor, from an in rein action against CT Page 1943 property, in the following manner.
 Plaintiff is in no way attempting to enforce this debt as a personal liability of the Debtor, and in fact is seeking nothing from Emira Rinella. Instead, the Plaintiff is attempting to collect its debt by pursuing a fraudulent transfer actions, which was commenced prior to the filing of the bankruptcy petition and which was secured by the filing of a Lis Pendens prior to said petition. . . . [T]he Plaintiff cannot be prohibited from attempting to collect its debt from property owned by an entity other than the Debtor. Section 524 of the Bankruptcy Code, by its terms, precludes a Creditor from pursuing a claim as a personal liability of the Debtor. This obviously does not apply in this case.
Plaintiff's Memorandum in Opposition, January 20, 1994, p. 3. Accordingly, plaintiff objects to Allenir's motion for summary judgment and motion to discharge the lis pendens.
Section 524 of the United States Bankruptcy Code sets forth the effects of a discharge in bankruptcy upon the debtor, creditors of the debtor, and other interested parties.
 (a) A discharge in a case under this title —
 (2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;
* * * CT Page 1944
 (e) Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.
U.S.B.C. 524(a)(2), (e). Plaintiff, citing Dixon v. Bennett,531 A.2d 1318 (Md.App. 1987), contends, that pursuant to 524, "a discharge specifically does not preclude an unsecured creditor from pursuing a fraudulent transfer claim against a third party, since such an action does not attempt to impose personal liability on the debtor." (Plaintiff's Memorandum in Opposition, January 20, 1994, p. 3.) The court in Dixon v. Bennett, supra, stated that the "language of 524(e) of the 1978 Bankruptcy Code reveals a congressional intent to broaden the rights of creditors, by preserving their actions against third parties and their property, and to restrict the effect of a discharge solely to a release of the personal liability of the debtor." (Emphasis in the original.) Dixon v. Bennett, supra, 1326. Accordingly, the court in Dixon v. Bennett allowed the unsecured creditor of the discharged debtor to pursue a fraudulent conveyance action against a transferee of the debtor's property subsequent to the debtor's discharge in bankruptcy.
Allenir does not contest the holding of Dixon v. Bennett, but instead contends that a recent United States District Court ruling, FDIC v. Cortina, supra, controls the present case. In FDIC v. Cortina, the debtor executed a mortgage note in November, 1987, payable to the plaintiff, secured by a mortgage on real property. In May, 1990, plaintiff instituted a foreclosure action claiming that the debtor had defaulted on the note and mortgage.
After determining that the value of the mortgaged property was insufficient to satisfy the debt, in November, 1990, plaintiff obtained ex parte prejudgment attachments of the debtor's reversionary interest in certain other property (hereinafter "transferred property") in order to secure potential deficiency judgments. The debtor had conveyed his interest in this transferred property to his wife in February, 1990. In November and October of 1990, plaintiff commenced two separate actions against the debtor and his wife alleging a fraudulent transfer in regards to the transferred property. Pursuant to these fraudulent transfer actions, plaintiff filed notices of lis pendens on the CT Page 1945 transferred property.
The ruling of FDIC v. Cortina addresses the debtor and his wife's motion to quash the prejudgment attachments that the plaintiff placed on the transferred property. The court granted the motion to quash on the ground that the attachment is invalid because the debtor had been discharged from the underlying debt in bankruptcy. The court determined that debtor's reversionary interest, the subject of the prejudgment attachments, was dependent upon the successful prosecution of the two separate fraudulent transfer actions. Thus, the court examined the validity of the fraudulent transfer actions in order to determine whether the debtor had any attachable interest in the transferred property. Specifically, the court addressed whether there was probable cause to sustain the fraudulent transfer actions.
 A discharge in bankruptcy does not . . . discharge the debt, but rather, it discharges the debtor from personal liability. A lien that is not avoided in the bankruptcy proceeding survives the bankruptcy. In such a case, a creditor is limited to proceeding with its collection efforts by pursuing only in rem actions against property subject to a valid pre-bankruptcy judicial lien.
(Emphasis in original.) (Internal citations omitted.) FDIC v. Cortina, supra, 7-8. The court further stated that "[u]nless valid liens have been filed in the fraudulent transfer actions, there is no probable cause to sustain those actions subsequent to the bankruptcy discharge." Id., 8.
The court further reasoned that while the plaintiff in FDIC v. Cortina did file a notice of lis pendens in the fraudulent conveyance actions, the lis pendens did not constitute a lien upon which the plaintiff could proceed. The court stated that "[u]nder Connecticut law, a lis pendens is not a lien, but merely serves as a notice to all subsequent purchasers that there is an action that may affect title to the property." Id., 8-9. The court ultimately held that the debtor had no attachable interest in the transferred property because there existed no probable cause to sustain the plaintiff's fraudulent transfer actions. CT Page 1946
Plaintiff seeks to distinguish FDIC v. Cortina from the present case in several ways. First, plaintiff argues that the court in FDIC v. Cortina did not specifically rule on whether a creditor may pursue a fraudulent transfer action against a third-party after the debtor has been discharged from personal liability on the debt. Second, plaintiff asserts that the case cited by that court for the proposition that in rem actions against third-parties are available only to creditors with valid pre-bankruptcy judicial liens, does not in fact state such a proposition. Instead, plaintiff argues that the holding of In Re Kalli, 34 B.R. 191
(Bankr. D. Vt. 1983), allows such creditors to enforce the lien after discharge, but does not prohibit other types of creditors to also pursue debt collection post-discharge.
While FDIC v. Cortina may in fact be distinguished based on the procedural posture of the case, the reasoning is persuasive with regards to the present case. Plaintiff in the present case failed to obtain a valid pre-bankruptcy lien on the property that was transferred by the debtor. Plaintiff merely filed a notice of lis pendens, which does not create a lien. Thus, plaintiff is not a secured creditor with an unavoided lien. Pursuant to the holding of FDIC v. Cortina, plaintiff, as an unsecured creditor, may not proceed with an in rein, fraudulent conveyance action against the third-party transferee, Allenir, on the ground that the debt upon which plaintiff is seeking to collect has been discharged in bankruptcy. Accordingly, Allenir's motions for summary judgment and to discharge the lis pendens are granted.
Robert A. Martin, Judge