CITIZENS BANK OF MASSACHUSETTS[1] vs. JOSEPH S.
CALLAHAN & others.[2]

No. 93-P-1641.

Bristol. January 18, 1995. - July 10, 1995.

Present: BROWN, SMITH, & JACOBS, JJ.

*Fraudulent Conveyance. Bankruptcy*, Fraudulent conveyance, Discharge,
Statute of limitations. *Statute*, Construction. *Tenancy by the entirety.*

A creditor's suit under the State fraudulent conveyance law, G. L. c.
109A, to recover on its claim against a debtor by proceeding against
those to whom the debtor had fraudulently conveyed assets was not
barred by the debtor's discharge in bankruptcy. [704-705]

In an action brought under G. L. c. 109A, there was ample evidence in the
record to support the judge's conclusion that the defendants' purpose in
participating in certain conveyances of real estate was to hinder, delay
or defraud the plaintiff [705-706], and there was no inconsistency in
the judge's conclusion that the defendants' actions did not amount to a
violation of G. L. c. 93A [706].

A 1977 conveyance of property by a husband and wife as tenants by the
entirety terminated any survivorship interest of the wife in the property.
[706]

CIVIL ACTION commenced in the Superior Court on Janu-
ary 13, 1978.

The case was heard by *Patrick F. Brady*, J.

*Paul W. Patten* for the defendants.

*Margaret A. Ishihara* for the plaintiff.

JACOBS, J. The defendants appeal from a Superior Court
judgment which orders the sale of property on Valentine
Street in Fall River (the locus) found to have been fraudu-

---

[1]Successor to Fairhaven Savings Bank.

[2]Dale A. Callahan, Richard M. Alegria, and Anita Callahan. Joseph S.
Callahan's motion for a directed verdict was allowed following opening
statements. The plaintiff waived its cross appeal, and we dismissed that
appeal without prejudice and without costs.

lently conveyed by Joseph and Dale Callahan and directing that the proceeds be applied to the plaintiff bank's claim. They argue that the bank is not entitled to such relief after Joseph's discharge in bankruptcy. We disagree and affirm the judgment.

We take our facts as found by the judge after a jury-waived trial. Following a mortgage foreclosure sale in June, 1977, of property owned by Joseph on South Main Street in Fall River, the bank's attorney informed him of a deficiency of about $29,000. Anticipating that the bank would look to the locus to satisfy the deficiency Joseph and his wife, Dale, in July, 1977, conveyed it to Richard M. Alegria, who gave no consideration for the conveyance and who then conveyed it to Anita Callahan, the mother of Joseph. The deed to Anita Callahan never was recorded.

After initiating a deficiency action in the District Court, the bank filed the present action in 1978, pursuant to G. L. c. 109A, the Uniform Fraudulent Conveyance Act, seeking to set aside the conveyances to Alegria and Anita Callahan. In 1985, before this action came to trial, Joseph filed a Federal bankruptcy petition and was discharged. The bank's request for relief from the automatic stay provisions of the Federal Bankruptcy Act,[3] originally sought in 1986, was allowed by the Federal District Court in 1988, in an unpublished decision which, in effect, removed any Federal barrier to "state court proceedings against parties other than the Debtor pertaining to the alleged fraudulent conveyance." In his decision, the Federal judge noted that "[t]he question whether . . . ch. 109A provides any relief for the Bank . . . against parties other than the Debtor . . . is a matter to be decided by the state courts unencumbered by a federal bankruptcy stay whose office is to protect only a debtor and his estate."[4]

---

[3] See 11 U.S.C. § 362(a)(1988).

[4] The defendants concede that the Federal District Court decision treats the issue in the present case as one of State law. The Federal judge declined to apply *In re Mortgageamerica Corp.*, 714 F.2d 1266, 1275 (5th Cir. 1983) (under Texas law [not a Uniform Fraudulent Conveyance Act jurisdiction] a debtor and hence a debtor's estate has a continuing legal or equitable interest in property fraudulently conveyed and, therefore, the au-

The Superior Court judge concluded that the conveyances to Alegria and Anita were "fraudulent" under G. L. c. 109A, § 7.[5]

1. *The effect of the Federal bankruptcy on the bank's claim.* Placed beyond the reach of a creditor is a conveyance to a "purchaser for fair consideration without knowledge of the fraud at the time of the purchase." See G. L. c. 109A, § 9(1). The judge found that Anita "did not take title to the property for fair consideration." A creditor may, pursuant to G. L. c. 109A, § 9(1)(*a*), have the fraudulently conveyed property "set aside . . . to the extent necessary to satisfy his claim." *David* v. *Zilah*, 325 Mass. 252, 256 (1950). See also *Joseph P. Manning Co.* v. *Shinopoulos*, 317 Mass. 97, 99 (1944).

While the bank no longer has a remedy against Joseph Callahan, his discharge in bankruptcy neither extinguished his debt nor, in the circumstances, prevents the bank from maintaining its status as a creditor and satisfying its judgment from the property in the hands of the transferee. "It is established that a 'discharge [in bankruptcy] destroys the remedy but not the indebtedness.' *Zavelo* v. *Reeves*, 227 U.S. 625, 629 (1913)." *Groden* v. *Kelley*, 382 Mass. 333, 336 (1981). See *Webster* v. *Kowal*, 394 Mass. 443, 447-448 (1985).

It is significant that the trustee in bankruptcy could not have avoided the deeds in question either at the time this action was brought or at the time of trial. That the conveyances occurred more than seven years before the bankruptcy petition was filed puts them well beyond the reach back powers of the trustee under 11 U.S.C. § 547(b) or

tomatic stay provisions of the Bankruptcy Code apply), and instead applied the rationale of *Unisys Corp.* v. *Dataware Prod., Inc.*, 848 F.2d 311, 313-314 (1st Cir. 1988) (affirming a District Court decision taking jurisdiction in a claim against property abandoned by the trustee in bankruptcy under 11 U.S.C. § 554, and allowing relief from the automatic stay provisions).

[5]General Laws c. 109A, § 7, provides in pertinent part: "Every conveyance made . . . with actual intent . . . to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

§ 548(a)(1988). In any event, even if the trustee could have avoided the conveyances, he would have been required to bring suit within two years of his appointment on June 3, 1985. 11 U.S.C. § 546(a)(1988).

No Massachusetts cases have come to our attention on the question whether a creditor may utilize G. L. c. 109A once the Federal bankruptcy trustee is time-barred from recovering property that has been fraudulently transferred by the debtor. However, that question has been answered affirmatively by another State's court in applying the Uniform Fraudulent Conveyance Act in generally similar circumstances. In *Dixon* v. *Bennett*, 72 Md. App. 620, 636 (1987), an unsecured creditor brought an action under the Maryland Uniform Fraudulent Conveyance Act seeking to reach certain assets which she claimed had been fraudulently transferred to the defendants. The suit was filed after the debtor had been discharged under the Federal Bankruptcy Act and also after the right of the trustee in bankruptcy to sue to avoid fraudulent transfers had expired. The Maryland Court of Special Appeals held that the creditor's suit under the State fraudulent conveyance law was not barred once the trustee was precluded from suing to recover assets fraudulently transferred by the debtor. The court reasoned that the barring of the State action after the expiration of the trustee's powers "would only serve to shield the recipients of fraudulent transfers at the expense of the unsecured creditor." *Id.* at 634. Aside from agreeing with the reasoning of this case,[6] we are mindful of the direction that our statute "shall be interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it." General Laws c. 109A, § 12.

2. *Other issues.* Contrary to the defendants' claim, there is ample evidence in the record to support the judge's conclu-

---

[6]Although the bank's actions are not in question in this appeal, we note with approval the observation in the Maryland decision that "the State court has the equitable power . . . to bar the suit if it discovers that the creditor was aware of the transfers and attempted to withhold [that information] from the trustee." *Dixon* v. *Bennett, supra* at 1326.

sion that the defendants' purpose in participating in the conveyances was to hinder, delay or defraud the bank. There was no inconsistency in his concluding also that the defendants Dale and Anita Callahan and Richard Alegria, acting as "passive vehicles," did not violate G. L. c. 93A. Lastly, there is no merit in the defendants' contention that the order of sale must be limited by the extent of the interest in the property which Anita Callahan received from Dale Callahan. This action was brought, and the conveyances in question were made, at a time when the characteristics of a tenancy by the entirety were governed by the common law.[7] See *West v. First Agric. Bank*, 382 Mass. 534, 535 (1981). At common law, a wife's sole interest in property held by her and her husband as tenants by the entirety was her right to survivorship. *Licker v. Gluskin*, 265 Mass. 403 (1929). See Glendon, Tenancy By The Entirety In Massachusetts, 59 Mass. L.Q. 53 (1974). When Dale voluntarily joined Joseph in the fraudulent conveyance to Alegria, the tenancy by the entirety was severed and her survivorship interests terminated. See *Mt. Washington Coop. Bank v. Benard*, 289 Mass. 498, 500-501 (1935); *Childs v. Childs*, 293 Mass. 67, 70 (1935); *West v. First Agric. Bank, supra* at 536 n.4; Eno & Hovey, Estate Law § 5.43, at 140 (3d ed. 1995).

*Judgment affirmed.*

---

[7]Tenancies by the entirety underwent extensive statutory alteration in 1980. See St. 1979, c. 727, amending G. L. c. 209, § 1.