EMANUEL NUGENT v. JOHN GOLDSMITH.

*Replevin—Fraud—Evidence.*

The judgment in this case was affirmed, the errors assigned being held trivial and without merit.

Error to Kent. (Montgomery, J.) Argued January 29, 1886. Decided February 3, 1886.

Replevin. Plaintiff brings error. Affirmed.

*Taggart, Wolcott & Ganson,* for appellant.

*John C. Quinsey* and *James Nugent,* for defendant.

MORSE, J. The plaintiff brought replevin to recover the possession of a span of horses taken by the defendant as a deputy sheriff of Kent county, by virtue of a writ of attachment issued out of the circuit court for said county at the suit of Mary Nugent against Daniel Nugent.

In the spring of 1879, Daniel Nugent was residing with his mother upon an 80-acre homestead, the legal title of which was in him, subject to a life-lease thereon to his mother, and also a life-lease upon one forty to an invalid brother, John Nugent, to take effect upon the death of the mother. Daniel also owned 120 acres of land, subject to a mortgage to another brother, James Nugent, for something over $3,000. He also owned considerable property, consisting of stock, tools and farming utensils, valued from $1,000 to $1,600. He was owing his mother for part of the purchase price of the premises about $850, secured only by promissory notes. He was also owing to other parties about $300. The 200 acres of

land was shown to be worth from $1,000 to $7,000, free and clear of the incumbrances of the mortgage and life-leases, the testimony of the witnesses upon that subject differing widely.

In the months of March and April, 1879, Daniel Nugent deeded the whole of this land, subject to the incumbrances, to his brother, the plaintiff, and also gave him a bill of sale of all his personal property, and left the country. The deed was dated March 31st, and the bill of sale April 29th. There was a verbal arrangement between Daniel and Emanuel that Emanuel should pay Daniel's debts to others than his mother, but no provision was made to take care of her notes.

This transfer is attacked by the defendant as fraudulent, without sufficient consideration, made for the purpose of defrauding the mother, and therefore void. It is conceded that the plaintiff paid no money for the land or personal property, and he testifies that he never sent his brother any money ; that Daniel said he never calculated to return ; and that he was aware at the time of the transfer that Daniel was owing his mother.

The question as to whether this sale or transfer of the property was made with the intent of defrauding the creditors of Daniel was submitted specially to the jury, who found that it was. The plaintiff brings error.

The first assignment relates to the admission of certain testimony on redirect examination of James Nugent, a witness for the defendant. The counsel for plaintiff, on cross-examination of this witness in reference to the notes held by his mother against Daniel, and seeking to show that after the avails of the same were used to pay an indebtedness of the father of the sons and husband of the mother, the balance, or in case there was no indebtedness, the whole, of the notes were to be surrendered to Daniel, asked the following question : 

" *Question.* Do you know anything about the understanding between your mother and Daniel that if such indebtedness was not discovered that these notes would be surrendered to Daniel ?

*Answer.* No, sir; there was no such understanding that I ever heard of. I was present when they were written and signed, and I never heard of any such arrangement being made."

Here plaintiff's counsel left the witness without further inquiry. On redirect he was allowed to state what the understanding was at the time the notes were made, which he testified was that two of the notes were to be placed in the hands of Joseph Nugent, another son, with instructions to investigate the father's matters in Ohio, and if anything was found owing by him there to pay it, and to use the balance to defray the mother's funeral expenses and erect a monument.

This, we think, was entirely proper. The question of plaintiff's counsel implied a claim on his part that the notes were not to be enforced against Daniel unless such indebtedness was discovered; and to meet such claim what took place at the inception of the notes as to their use was perfectly legitimate.

Errors are also claimed in the instructions of the court to the jury in three particulars :

*First,* that they were allowed, if they found as a fact that the price the plaintiff was to pay Daniel for the property was grossly inadequate to the real value, to consider such fact as bearing upon the good faith of the transfer.

*Second,* that they might also consider the evidence of the transfer having been kept secret from the mother as also having a bearing upon the same question.

*Third,* that if they found the fact to be that there was actually a purpose to *remove* the property beyond the reach of creditors, it would have a bearing upon the motive of the transaction.

It is argued that there was no evidence upon which to base the first two instructions, and as to the third that the word "remove" meant a manual transportation of the property, and there was no evidence that there was any such removal.

We are satisfied that these instructions were justified by the testimony in the case. The word "*remove,*" in the sense in which it was used by the court, evidently meant the plac-

ing or putting of the property out of the reach of the creditors by this pretended transfer, and the jury must have so understood it. In that view of the meaning of the word, the evidence warranted this portion of the charge. The errors assigned seem to us to be trivial and without merit.

The judgment below must be affirmed, with costs of both courts.

The other Justices concurred.