JOHN BRESNAHAN, ADMINISTRATOR OF THE ESTATE OF DANIEL NUGENT, DECEASED, v. EMANUEL NUGENT.

[See 59 Mich. 593; 70 Id. 52; 77 Id. 500.]

*Fraudulent conveyances—Action by administrator—Statute of limitations—Res judicata—Evidence—Estoppel.*

1. An administrator sued in *assumpsit* under How. Stat. § 5884, to recover, for the benefit of the sole creditor of the estate, for personal property fraudulently conveyed by the deceased in his life-time to the defendant.   More than six years had elapsed since the maturity of all of the creditor's claims when the suit was commenced, but as to two of said claims that period had not elapsed when the debtor died; he having left the State soon after making the conveyance, and administration of his estate having been granted after the lapse of seven years from the time when he was last heard from.   The defendant gave notice of the statute of limitations, which is held a good defense by McGRATH and GRANT, JJ., as to all of the claims, and by MORSE, C. J., as to the claims which matured six years before the debtor's death, for reasons stated in the opinions of Mr. Justice McGRATH and Chief Justice MORSE, to which reference is had.

2. Mr. Justice MONTGOMERY filed an opinion, concurred in by Long, J., favoring a reversal, and holding:

*a*—It was error to allow the plaintiff to show that, at about the same date as the transfer of the personalty, the deceased conveyed to the defendant certain lands upon which wheat was growing, which was afterwards harvested, and yielded the number of bushels charged in the declaration to have been sold to the defendant, the declaration containing no allegation of such conveyance.

*b*—It was error to include in the recovery the value of exempt property, or the sum realized for the same.

*c*—A judgment in favor of the defendant in a replevin suit brought by the defendant in this suit to recover a portion of the property from an attaching creditor (the assignor of the creditor in interest here), in which the jury found specially that the sale to the defendant was fraudulent as to creditors, is conclusive in this suit upon that question.

*d*—The dismissal of a bill without prejudice, filed by a general creditor of the deceased against the defendant to enforce the conveyance as a trust for creditors, will not estop the plaintiff from bringing this suit, on the ground that the creditor in whose interest it is prosecuted is the assignee of the claim of such general creditor, and therefore in privity with him.

Error to Kent. (Adsit, J.) Argued March 10, 1892. Decided June 10, 1892.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinions.

*Taggart, Wolcott & Ganson,* for appellant, contended:

1. Nearly eleven and a half years elapsed between the date of the alleged conversion and the bringing of this suit, and the action is barred by the statute of limitations, the application of which is not affected by the death of Daniel Nugent; citing *Hughes v. Littrell,* 75 Mo. 573; *Rogers v. Brown,* 61 Id. 187; *Cavanaugh v. Britt,* 13 S. W. Rep. 923; *DeArmond v. Ballou,* 23 N. E. Rep. 766.

2. How. Stat. § 5884, under which this suit is brought, contemplates only the bringing of such suits as might be brought by the individual creditors in fraud of whom the transfer was made, and the weight of authority holds that an action in *assumpsit* or on the case will not lie against one who has

received a conveyance of property fraudulently conveyed; citing *Adler v. Fenton,* 24 How. 407; *Lamb v. Stone,* 11 Pick. 527; *Wellington v. Small,* 3 Cush. 145; *Aspinall v. Jones,* 17 Mo. 209; *Moody v. Burton,* 27 Me. 427; *Smith v. Blake,* 1 Day, Cas. 258; Wait, Fraud. Conv. §§ 59, 62.

3. The real plaintiff in this case, James Nugent, and also the parties who were the holders and owners of the claims which he subsequently acquired and has proven against the estate of his brother Daniel, are estopped by their own acts from questioning the validity of the conveyance from Daniel to the defendant. With full knowledge of this conveyance, and all of the circumstances connected therewith, James Nugent took from the defendant a deed of 120 acres of the 200 acres which had been deeded to Emanuel Nugent, the defendant, by his brother Daniel, which conveyance was given and received in satisfaction of the mortgage of $3,200, which James Nugent then held upon the said land, and the payment of which mortgage had been assumed by said defendant. This occurred in March, 1880. In September, 1880, all of the parties whose claims have since been assigned to and are held by James Nugent filed their bill of complaint in the circuit court for the county of Kent, in chancery, praying that the transfer of real and personal property from Daniel to the defendant be sustained and enforced as a conveyance in trust. These acts of the several parties are equivalent to an election on their part that the transfer which is now attacked as invalid should be treated as valid and effectual.

4. A conveyance of property, even though given and received for the purpose of hindering, delaying, or defrauding the creditors of the grantor, is good as between the parties. It is also good as against all the world, unless assailed by the creditors whom it is designed to defraud; citing *Millar v. Babcock,* 29 Mich. 526; *McMaster v. Campbell,* 41 Id. 513; *Hall v. Moriarty,* 57 Id. 346; and as to such creditors it is not void, but only voidable at their option, if they see fit so to treat it, and if they elect to treat it as valid they cannot afterwards claim that it is fraudulent; citing Bigelow, Estop. (5th ed.) 685; Herm. Estop. §§ 1028, 1029, 1058; *Rennick v. Bank,* 8 Ohio, 529; and a party who has inconsistent remedies having elected one remedy, his right to pursue the other is gone, an election once exercised being final and beyond recall; citing Herm. Estop. § 1045; *Morris v. Rexford,* 18 N. Y. 552; *Rodermund v. Clark,* 46 Id. 354; *Thompson v. Howard,* 31 Mich. 309; *Detroit v. Paving Co.,* 38 Id. 361; *Nield v. Burton,* 49 Id. 54; and any decisive act of a party in such a case determines his election; citing Bigelow, Estop. (5th ed.) 679; *Sanger v. Wood,*

3 Johns. Ch. 416; *Hanly v. Kelly*, 62 Cal. 155; and the institution of a suit is such an act; citing *Connihan v. Thompson*, 111 Mass. 272; *Butler v. Hildreth*, 5 Metc. 49; and the fact that the suit first brought was in' a court having no jurisdiction does not destroy the election; citing Herm. Estop. § 1051; *Nield v. Burton*, 49 Mich. 53.

*J. H. Tatem*, for plaintiff, contended:

1. Where a vendee of property conveyed in fraud of creditors has taken possession of and sold the property, and received money therefor, the creditor, or, as in this case, the administrator of the vendor's estate, may waive trover, and bring *assumpsit*, by affirming the sale as made in his behalf, and recover in this form of action the benefit of the transaction; citing *Watson v. Stever*, 25 Mich. 386; *Tolan v. Hodgeboom*, 38 Id. 624; *Ward v. Warner*, 8 Id. 519.

2. So long as the indebtedness exists against the estate, and is a live, valid, and legal claim, the right of the plaintiff to pursue the property fraudulently conveyed to the defendant continues, as to whom the statute of limitations does not run.

3. As a general rule statutes of limitation do not run against any claim while it is in litigation, and additional time is allowed in which to sue in cases where the proceedings fail for matter of form not affecting the merits; citing 13 Amer. & Eng. Enc. Law, 745; *Premo v. Lee*, 56 Vt. 60; *Coffin v. Cottle*, 16 Pick. 386; *Napier v. Foster*, 80 Ala. 379.

4. The election to enforce the conveyance as a trust was made because of the claim of the defendant that he held the property in trust, which was insisted upon by him until after the institution of the suit in equity to enforce said trust, after which defendant claimed to be the absolute owner of the property, which first claim was made for the purpose of misleading James Nugent, and to induce him to accept the deed of a part of the lands in satisfaction of his mortgage, and which deed was accepted as an inducement for the defendant to pay all of the unsecured debts of Daniel Nugent; and such election and suit will not estop plaintiff from maintaining this suit; citing 6 Amer. & Eng. Enc. Law, 250; *Childs v. Stoddard*, 130 Mass. 110; *Pratt v. Philbrook*, 41 Me. 132; *Baldwin v. Tuttle*, 23 Iowa, 66; and the estoppel of a deed will be limited to actions based upon it, and· growing out of the transaction in which it was executed, and does not extend to a collateral action, where the cause is different, while the subject-matter may be the same; citing *Collins v. Tillon*, 26 Conn. 368; *Carpenter v. Butler*, 8 Mees. & W. 209; *Merrifield v. Parritt*, 11 Cush. 590; and the presumption is against, rather than in

favor of, an estoppel; citing Herm. Estop. § 580; and an estoppel will generally be suppressed where its enforcement would produce fraud, and will, on the other hand, be called into being for the prevention of fraud; citing Id. § 593.

5. We are at a loss to see how the vendee of a deceased party, who was a non-resident of this State, can claim the benefit of our exemption laws as to any property afterwards found within the State. The law applies at the time of the levy or seizure, and not at the time of the transfer; citing *McHugh v. Curtis*, 48 Mich. 262; *O'Donnell v. Segar*, 25 Id. 367; *King v. Moore*, 10 Id. 538.

MONTGOMERY, J. On the 29th of April, 1879, Daniel Nugent, by bill of sale, transferred all his personal property to his brother Emanuel Nugent, the defendant, and immediately left the State. Daniel was last heard from in September, 1879, and after the lapse of seven years from that time letters of administration were issued to the plaintiff. James Nugent presented claims, which were allowed against the estate, as follows:

1. A joint note made by James and Daniel Nugent to John Nugent, dated April 8, 1876, and payable one year from date, for $191, less indorsements.

2. Two notes for $150 and $300, respectively, each bearing date September 11, 1878, and payable to Mary Nugent or bearer, and due three years from date, with interest.

3. One note for $400, given to Mary Nugent, of the same date, and payable five years from date, with interest.

4. A claim for support of Mary Nugent and Cecelia Nugent, mother and sister of Daniel Nugent, amounting to $694.58, with interest, which support Daniel Nugent had agreed to furnish by contract with Mary Nugent, which contract was by her assigned to James.

No property came into the hands of the administrator, and this suit is brought under sections 5884 and 5885 of Howell's Statutes, under a claim that the personal property transferred to Emanuel was so transferred in fraud of creditors.

The plaintiff recovered a judgment of $2,390.33, and defendant brings error.

1. The plaintiff described, in the first count of his declaration, the personal property claimed to have been transferred, including in the description 953 bushels of wheat. He also appended the common counts for goods sold and delivered and the money counts, but nowhere alleged any transfer of real property. The plaintiff was permitted to show that at about the same date as the transfer of the personalty a deed of lands upon which wheat was standing growing was made, and that it afterwards harvested and threshed out 953 bushels or thereabouts. This was error. The conveyance of the land was confessedly good as against Daniel, and the wheat growing upon the land passed by the conveyance. The pleadings in this case did not apprise the defendant of any attempt to attack such conveyance, even if it were possible to treat the wheat as personal property belonging to Daniel, without first setting aside the conveyance, —a question not involved, and which we do not decide. But, if the product of the land could be thus treated for this year, it might with equal propriety be open to the plaintiff to reap the benefit of all crops since grown upon the land, without regard to the labor involved in producing them.

2. A portion of the property transferred was exempt. The recovery did not exclude this. This is error. It has been frequently held that a creditor cannot complain of any disposition which a debtor sees fit to make of exempt property. *Buckley v. Wheeler*, 52 Mich. 1; *Fischer v. McIntyre*, 66 Id. 681; *Freehling v. Bresnahan*, 61 Id. 540.

3. Complaint is justly made of testimony which related to family jars subsequent to the purchase, and of testi-

92 MICH.—6.

mony relating to defendant's treatment of his sister. These transactions had no bearing upon the issue here involved. Without referring to the numerous objections in detail, one may be stated by way of illustration. Joseph Nugent, who resides in Iowa, came to Michigan in March, 1880, and was permitted to testify that he "found all the connections were in a hostile camp; Emanuel on one side alone, and the family and all the connections on the other side." This was not only irrelevant, but well calculated to prejudice the jury.

4. Mary Nugent, in her life-time, brought suit against Daniel, and attached a portion of the personal property transferred. Emanuel brought replevin against the sheriff, and James, as assignee of his mother, defended the suit on the ground that the bill of sale, as against Daniel's creditors, was fraudulent. This defense prevailed, and the jury found specially that such transfer was fraudulent as against the creditors of Daniel.[1] The circuit judge charged the jury, in effect, that this judgment, rendered between privies of the parties to this suit, was conclusive as to the fact of the fraudulent character of the transfer. Complaint is made of this ruling, but we think it right. The question is not whether defendant would be concluded as to all questions which might have been tried, as was contended in *Jacobson v. Miller*, 41 Mich. 90, but in this case the question of fraud was in fact tried, and it was precisely the same question as is here involved, and between the privies of the parties here before the court. *Barker v. Cleveland*, 19 Mich. 230.

5. The defendant also relied on the statute of limitations, but the circuit judge disallowed the defense. The question, as it arises on this record, is novel. Any action of Daniel against Emanuel would, of course, be

---

[1] See *Nugent v. Goldsmith*, 59 Mich. 593.

barred; but does it follow that an action by or for the use of the creditor is likewise barred ? In this case to so hold would be to exclude the creditor from all remedy. The right of action in favor of the creditor did not accrue until the maturity of the obligations against Daniel, which, in the case of one of the notes, was not until 1883, and, in case of the assigned claim for support until 1884; but not only is this true, but it is also true that the creditor could not by the ordinary process attack such transfer until a judgment had been obtained against Daniel; so that to hold that this right of action is barred is to hold that the action may be barred before the statute begins to run.

It is suggested that the defendant might have been charged as a garnishee in a suit against Daniel. This, it is true, might have been done after the maturity of the claims if the plaintiff was able to make the statutory affidavit, but, so far as the relation of defendant is concerned, he would in no sense be a defendant in an action of trover, on the case, or in *assumpsit,* and therefore not within the protection of the statute (section 8713). The fact that in such action by anciliary proceedings an attempt might be made to charge the defendant as a trustee, and his oath taken, and proceedings had upon them, does not constitute such suit an action of *assumpsit,* replevin, or trover against him, within the meaning of this statute.[1]

6. In 1880, Mary Nugent joined with others in filing a bill against Emanuel, alleging that this property was conveyed by Daniel in trust for his creditors. This bill was demurred to, and dismissed without prejudice. It is now claimed that this estops James, who is in privity

---

[1] How. Stat. § 8713, bars actions in *assumpsit,* replevin, and trover if not commenced within six years next after the cause of action accrues.

with Mary, from attacking the conveyance as fraudulent; but we think this position is not tenable. There was no declared trust, and none recognized by Emanuel, and, as it now appears that the transfer was fraudulent as to creditors, it is conclusive also that there was no trust which could be enforced by a bill in equity by those who were not judgment creditors.

It is suggested that, as this claim of estoppel does not appear to have been litigated in the replevin suit, the estoppel of that judgment as to this question extends only to the subject-matter therein involved; but this contention ignores the fact that the finding in that case established conclusively that the transfer of this personal property was fraudulent, and made under such circumstances that one not a judgment creditor could have no remedy by a bill in equity. An ineffectual attempt to enforce a claim which has no legal existence does not estop a party from thereafter asserting one which is valid. *Rodman v. Railroad Co.*, 59 Mich. 395; *Detroit v. Houghton*, 42 Id. 459.

For the errors pointed out the judgment below should be reversed, and a new trial ordered.

LONG, J., concurred with MONTGOMERY, J.

McGRATH, J. In April, 1879, Daniel Nugent conveyed to the defendant, his brother, a farm of 200 acres of land, with growing crops, and the stock, farm implements, and other personal property thereon, and soon after left the State, and never returned. Daniel was indebted, at the time of his departure, upon three notes, amounting to $850, dated September 11, 1878, two of them running three years, and one payable in five years; and upon one note, amounting to $191, dated April 8, 1876, payable one year from date, upon which $45 had been paid September 15, 1877. He was under other obligations for

the care and support of his mother and sister. These notes and obligations were subsequently, in August, 1884, assigned to James Nugent. Daniel was heard from after his departure, but a period of seven years elapsed after he was last heard from, and in July, 1888, letters of administration were taken out upon his estate. Commissioners on claims were appointed, and James Nugent presented and had allowed claims aggregating nearly $2,500 on the notes and obligations aforesaid. The administrator, in October, 1890, brought *assumpsit* under How. Stat. § 5884, alleging the sale, transfer, and delivery in April, 1879, of the personal property by Daniel Nugent to defendant, its disposition, a deficiency of assets, and that the sale made to defendant was without consideration, and was made with intent to defraud creditors. Defendant set up the statute of limitations.

How. Stat. § 5884, is as follows:

"When there shall be a deficiency of assets in the hands of an executor or administrator, and when the deceased shall, in his life-time, have conveyed any real estate, or any right or interest therein, with the intent to defraud his creditors, or to avoid any right, debt, or duty of any person, or shall have so conveyed such estate that by law the deeds or conveyances are void as against creditors, the executor or administrator may, and it shall be his duty to, commence and prosecute to final judgment any proper action or suit, at law or in chancery, for the recovery of the same, and may recover, for the benefit of the creditors, all such real estate so fraudulently conveyed; and may also, for the benefit of the creditors, sue and recover for all goods, chattels, rights, or credits which may have been so fraudulently conveyed by the deceased in his life-time, whatever may have been the manner of such fraudulent conveyance."

The statute provides that all actions of *assumpsit*, all actions of replevin and trover, and all other actions for taking and detaining goods and chattels, shall be com-

menced within six years after the cause of action shall accrue, and not afterwards. How. Stat. § 8713.

The present action is predicated upon a fraudulent conveyance of the personal property to defendant in April, 1879. It is to recover the amount of four notes, one of which matured in 1877, eleven years before Daniel Nugent's death, and thirteen years before the commencement of this suit; two of which matured in 1881, seven years before Daniel's death, and nine years before this suit was commenced; and one of which matured in 1883, five years before Daniel's death, and seven years before this suit was commenced; and also upon a claim for the care and support of the mother and sister, the last item of which is dated August 16, 1884.

It is unnecessary, in the present case, to determine whether or not the statute commenced to run in favor of defendant from the time of the conveyance or conversion, for here more than six years elapsed after all the claims against Daniel matured before this suit was brought. The statute makes conveyances with intent to defraud creditors voidable at the instance of creditors. For more than six years no attack was made upon the conveyance of the property, the recovery of the value of which is here sought. It is immaterial whether a promise or trust be implied. The statute runs against an implied, as well as an express, promise; and where a trust is created by implication of law the statute commences to run from the repudiation of the trust. The statute certainly commenced to run in favor of defendant and against the creditors at the time that the maturity of their debts placed them in a position to follow the property. The absence or death of Daniel Nugent did not interrupt the running of the statute in favor of defendant. A cause of action may accrue against one

absent from the State, but by virtue of express pro-
visions the statute does not operate until his return. A
cause of action may accrue after the death of either
party, but because the statute so provides the time does
not begin to run until the appointment of an adminis-
trator. Suits may be commenced in such cases, not
because the cause of action did not accrue until the dis-
ability was removed, but because the period is expressly
extended beyond the disability. 7 Amer. & Eng. Enc.
Law, p. 376, and cases cited. Here, Daniel's absence and
death kept alive the claim of the creditors as against
him and his estate, but the absence of Daniel did not
defer the accrual of the right of action in favor of the
creditors, and the death of Daniel did not toll the statute
as against defendant, because such a case is not within
the statute. The statute, being general, must operate
upon all cases which are not exempted by express exemp-
tion. 4 Bac. Abr. 475. After the right of action once
attached, and the statute had commenced to run against
the creditors, if the death of Daniel Nugent in any wise
affected their ability to pursue their remedy, that was
a disability not within the contemplation of the statute,
and the statute continued to run notwithstanding. *Ten
Eyck v. Wing*, 1 Mich. 40, 46.

Section 5884 provides for the bringing of any proper
action or suit. It can not be contended that it was the
intention of the Legislature to revive rights of action in
favor of creditors which have been barred by the statute
of limitations. The creditors might have proceeded under
chapter 277, How. Stat., §§ 8087, 8091, in trover or
*assumpsit* for the property in question. This statute,
like all others empowering executors or administrators to
bring suits, must be construed with reference to other
statutes relating to actions, rights of action, and reme-
dies. The construction contended for would defeat the

very purpose of statutes of repose by enabling an administrator to revive actions against which the statute had run, and to bring trover for a conversion happening half a century before the commencement of suit. Certain rights of action survive to executors and administrators in favor of the estate, but only those against which the statute has not run. This statute gives to them certain rights of action in favor of creditors, but it cannot be construed as giving them a right of action in favor of a creditor where the full period of the statute has run in favor of the person sought to be charged and against the creditor. As is said by CAMPBELL, J., in *Blake v. Hubbard*, 45 Mich. 1, 4:

"The decisions on the subject of frauds against creditors do not hold fraudulent assignments so absolutely void that the parties may not lose their right of complaint by waiver or acquiescence."

In *Fearey v. Cummings*, 41 Mich. 376, 384, it is said that section 8091[1] is confined to titles and conveyances of such property as the garnishees have in possession at the time of making the affidavit. Upon examination of the record in that case it appears that the garnishees had taken a chattel mortgage upon a stock of goods, but had not filed it until the day upon which they took possession; but they claimed that the possession which they took was not, in fact, under the mortgage, but by virtue of a parol understanding under which the debtor voluntarily turned over the goods to them to enable them to make their debt. They insisted that such voluntary delivery of the goods was but a preference. In

---

[1] How. Stat. § 8091, provides that, "if any person garnished shall have in his possession any of the property aforesaid of the principal defendant, which he holds by a conveyance or title that is void as to the creditors of the defendant, he may be adjudged liable as garnishee on account of such property, although the principal defendant could not have maintained an action therefor against him."

the brief of counsel for garnishees the point is made that, in order to bring the case under the section named, the garnishees must be holding under the void title at the time of the garnishment. Upon the second trial a recovery was had against the garnishees, and the judgment was affirmed (44 Mich. 39), although at the time of the commencement of the garnishee proceedings the stock of goods had been sold, and was not in the possession of the garnishees; GRAVES, J., who wrote the opinion in the first case, dissenting.

It appears that in 1882 Mary Nugent commenced suit on certain of the notes by attachment running against the real estate, and recovered judgment in February, 1883; that she then filed her bill against Daniel Nugent and defendant in aid of this levy, but in April, 1888, the proceedings were held defective, and were set aside. In May, 1888, application was made for the appointment of an administrator, and it is insisted that under How. Stat. § 8723, this right of action has been thereby kept alive. That was a proceeding to subject the real estate to the payment of a claim by virtue of an attachment. This is an action for the recovery of the value of personal property. Not only is the form of action distinct, but the subject-matter is different.

The plea of the statute must be held good, and the judgment reversed, with costs of both courts to defendant.

GRANT, J., concurred with McGRATH, J.

MORSE, C. J. In this case I do not fully agree with either of the opinions filed by Justices McGRATH and MONTGOMERY.

As to the note of $191, dated April 8, 1876, made by James and Daniel Nugent to John Nugent, and due in one year, the statute of limitations had begun to run against Daniel before he left the State, and it was there-

fore in a shape to take proceedings against Daniel when the transfer was made to Emanuel. Neither in law nor equity is there any reason why Emanuel, who has never been out of the jurisdiction of the courts of this State, should now be proceeded against for the amount of this note, 11 years after his alleged fraudulent dealings with Daniel. And I agree with Mr. Justice McGRATH that the notes maturing in 1881—seven years before Daniel's death— are covered by the statute of limitations; but as to the note maturing in 1883, and the claim for support, which accrued in 1884, the statute of limitations, as against Daniel, was postponed for a period until the appointment of an administrator, and two years thereafter, and I think also as against Emanuel. How. Stat. § 8722. Bresnahan was appointed administrator July 17, 1888, but appeal was taken to the circuit court by Emanuel, and in that court the order of the probate court appointing an administrator was set aside. James appealed the matter to this Court, where the order of the probate court was affirmed November 8, 1889.[1] The administrator was therefore not appointed until the decision of this Court, and the suit was commenced against Emanuel within two years from that date.

While Daniel was living and absent from the State Emanuel could have been proceeded against as garnishee of Daniel under sections 8087, 8091, How. Stat., and the action in such case as against Emanuel, the garnishee defendant, would have been in *assumpsit* or trover. Therefore, if the creditor allowed his claim against Daniel, upon which he bases his action against Emanuel, to sleep for six years after its maturity, he has lost such right of action because of the statute of limitations. But he would have the right to commence his action at any time within six years; and as, in order to reach Emanuel,

---

[1] See *In re Estate of Nugent*, 77 Mich. 500.

he must make Daniel a party to the suit or garnishee proceedings, it follows that, as to the notes and claims which had not run.six years from maturity before Daniel's death, the creditor could not proceed until an administrator was appointed, and then I think he would be entitled to the two additional years provided by statute against Emanuel as well as Daniel's estate.

It was said by Mr. Justice GRAVES in *Fearey v. Cummings*, 41 Mich. 384, that the right given by section 8091, How. Stat., to assail conveyances set up by garnishees on the ground of being fraudulent as against creditors, was confined to conveyances of property in the hands of the garnishee at the time of commencement of the garnishee suit, and did not apply where the property had been fraudulently received by such garnishee, but disposed of before suit. I think this language evidently refers to property passing into the hands of the garnishee, and then being disposed of, passing out to another or to the original owner, and not to a case where it is shown that, although the garnishee has disposed of the property before action commenced against him, he still has the avails of such property in his own hands, or has converted the proceeds of the sale of it to his own use. In such case he has money and effects in his hands belonging to the creditors of the principal defendant, and the words "any of the property aforesaid," used in section 8091, refer not simply to property in its restricted sense of goods and chattels, but to money as well, which is property in the largest and proper sense of the word.[1]

In my opinion, the statute of limitations has run against the notes falling due over six years before the death of Daniel.

I therefore concur in the reversal of the judgment.

---

[1] See *Heineman v. Schloss*, 83 Mich. 153.