Sandra L. CRAFT, Plaintiff,

v.

The UNITED STATES of America, acting through the Internal Revenue Service, Defendant.

No. 1:93–CV–306.

United States District Court,
W.D. Michigan,
Southern Division.

March 30, 1999.

Jeffrey Alan Moyer, Donovan, Love & Twinney, P.L.C., Grand Rapids, MI, for Sandra L. Craft, plaintiff.

Daniel M. LaVille, U.S. Attorney's Office, Grand Rapids, MI, John A. Lindquist, Trial Attorney, U.S. Dept. of Justice, Washington, DC, for Internal Revenue Service, defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

QUIST, District Judge.

### Background

Plaintiff, Sandra L. Craft ("Sandra"), filed this action seeking to quiet title to the proceeds of the sale of certain real property located at 2656 Berwyck Road in Grand Rapids, Michigan (the "Berwyck Property"), which Plaintiff had owned with her husband, Don Craft ("Don") as tenants by the entireties. Specifically, Plaintiff alleged that a tax lien filed by the Internal Revenue Service ("IRS" or "Government") for taxes owed by Don did not attach to the Berwyck Property while Sandra and Don owned it as tenants by the entireties or when Don terminated the entireties estate by delivering a quitclaim deed to Sandra on August 28, 1989. Sandra filed a motion for summary judgment on September 10, 1993, in which she argued that the Government was precluded from maintaining a fraudulent conveyance action on the grounds that Don had been discharged from his debts in bankruptcy. The Government also moved for summary judgment on Sandra's claim, contending that its lien did attach to Don's interest in the Berwyck Property. On September 12, 1994, this Court issued an Opinion and Order denying Sandra's motion for summary judgment and granting the Government's motion for summary judgment on the basis that the IRS's lien attached in the interval of time between Don's termination of the entireties and his conveyance of his interest to Sandra.

On November 17, 1994, the Court issued another Opinion and Order which granted two and denied two of four motions filed by Sandra on September 22, 1994. In particular, the Court granted Sandra's motion to determine the value of Don's interest at the time of the termination of the joint tenancy and her motion for stay of

execution of the judgment, and denied her motions to amend the judgment to include its findings supporting denial of her motion on the Government's fraudulent conveyance claim and to refer the case to the bankruptcy court for determination of the value of Don's interest. On October 26, 1995, the Court issued an Opinion and Final Judgment in which it found that the value of Don's interest in the property at the time of the conveyance was $50,293.94.

Sandra appealed the September 12, 1994, Order granting summary judgment in favor of the Government. The Sixth Circuit reversed the Order on the grounds that the lien could not have attached to the entireties interest under Michigan law and that the entireties estate was not "transformed into a tenancy in common as an intermediary step in the conveyance of the property" to which the lien could have attached. *See Craft v. United States,* 140 F.3d 638, 643–44 (6th Cir.1998). In addition, the Sixth Circuit held that Don did not possess a separate future interest in the Berwyck Property to which the lien could have attached. *See id.* at 644. Thus, the Sixth Circuit effectively held that Sandra prevailed on her complaint to quiet title. However, the court found that "[d]espite the fact that the tax lien did not attach to the Berwyck Property, there remains an issue of whether a fraudulent conveyance occurred in this case...." *Id.* Accordingly, the court remanded the case for determination of the fraudulent conveyance issue. On December 1, 1998, the Court conducted a bench trial on the fraudulent conveyance issue. The Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a) are set forth below.

1. Any finding of fact that is a conclusion of law shall be considered as such.

2. In her response to the Government's post-trial brief, Sandra argued that the Government failed to show that Don was allowed to deduct all mortgage interest and property tax payments because the initial tax figures prepared by IRS Revenue Agent Rosie Wilson ("Wilson"), which substantiated only a portion of the property tax and mortgage interest deductions, were the same as the final assess-

## I. *Findings of Fact*[1]

Sandra and Don purchased the Berwyck Property on May 26, 1972, as tenants by the entireties for $48,000. In connection with the purchase, Don and Sandra obtained a mortgage in the amount of $37,000. Don, a practicing attorney, failed to timely file federal income tax returns for his taxable years 1979 through 1987. As a result, the IRS filed substitute income tax returns for Don pursuant to 26 U.S.C. § 6020(b). In 1988, the IRS assessed Don's tax liabilities in the amount of $482,446.73. On March 30, 1989, the IRS filed a Notice of Federal Tax Lien against all of Don's property with the Register of Deeds for Kent County, Michigan.

As of April 15, 1980, the date on which the Government's claim for unpaid taxes first accrued, the fair market value of the Berwyck Property was $62,000 and the outstanding balance on the mortgage was $31,628.95, leaving Don and Sandra with net equity in the property of about $31,000. From 1979 to 1985, Don and Sandra made timely payments on their mortgage in the total amount of $19,692, which consisted of $12,999 in interest and $6,693 in principal. As a result, the mortgage balance was reduced to $25,301.05 by January 1, 1986. During the same period, Don and Sandra paid approximately $17,000 in real property taxes. After January 1, 1986, Sandra paid all of the mortgage and tax payments with her own money.

On July 28, 1988, the IRS assessed Don tax for the years 1979 through 1985 in the amount of $168,264.90. The final tax included deductions for all mortgage interest and property tax payments made by Don and Sandra from 1979 to 1985.[2] On March

ment. Sandra contends that the lack of difference between the initial and final numbers shows that Don was not allowed any deductions other than those substantiated in the initial figures prepared by Ms. Wilson. However, the fact that a greater amount of property tax or mortgage interest deductions was not substantiated does not mean that those deductions were not taken into account by Ms. Wilson in preparation of the initial figures. Ms. Wilson testified that her work pa-

30, 1989, the IRS filed a Notice of Federal Tax Lien against Don in the amount of $482,446. On August 28, 1989, Don conveyed his interest in the Berwyck Property to Sandra by quit claim deed for the sum of $1.00. During the period of April 15, 1980 through August 28, 1989, Don was insolvent.

Don filed a petition for relief under Chapter 7 of the Bankruptcy Code on January 30, 1992. The bankruptcy court entered an order of discharge on June 1, 1992, and the bankruptcy case was closed on June 11, 1992. In June 1992, the Berwyck Property was sold, yielding net proceeds of $119,888.20, after payment of the mortgage. Pursuant to an agreement between the parties, one-half of the net proceeds were distributed to Sandra, and the balance of the proceeds were deposited into an escrow pending a resolution of the dispute of the IRS lien. Don died on August 17, 1998.

## II. *Conclusions of Law*[3]

The issue presented for determination by the Court is whether the conveyance from Don to Sandra on August 28, 1989, constituted a fraudulent conveyance under Michigan's Uniform Fraudulent Conveyance Act ("Fraudulent Conveyance Act"), M.C.L. §§ 566.11 to 566.23. Prior to trial, the Government also raised in its trial brief, for the first time, the issue of whether the conveyance was fraudulent to the extent that Don enhanced the entireties property by paying both the property tax and mortgage payments from 1979 to 1985 while he was insolvent. Apart from her arguments on the merits, Sandra asserts that the Government's claim is not properly before the Court for various reasons. The Court will address these arguments first.

## A. Procedural and Limitations Issues

The Government raised its fraudulent conveyance argument as an affirmative defense in its answer to Sandra's complaint. Sandra contends that the Government cannot assert a fraudulent conveyance claim because it has not filed a complaint or a counterclaim. In addition, Sandra contends that the Government cannot now cure this omission by moving to amend its answer to file a counterclaim because the Government was required to assert any such counterclaim in its answer. Sandra also contends that any counterclaim would be barred by the statute of limitations.

■ Sandra has not cited any authority to support her proposition that when fraudulent conveyance is raised to defeat a quiet title claim it may only be asserted as a counterclaim and not as an affirmative defense. In fact, courts have allowed fraudulent conveyance to be raised as an affirmative defense to quiet title claims. *See, e.g., Snyder v. United States,* No. 88–CV–2136 (RR), 1995 WL 724529, at *13 (E.D.N.Y. July 26, 1995) (denying the plaintiff's motion to strike the Government's affirmative defense of fraudulent conveyance to the plaintiff's quiet title action); *Buffalo Valley Golf Club Partnership v. United States,* No. 2:93–CV–172, 1994 WL 574119, at *2 (E.D.Tenn. July 19, 1994) (finding "no reason why the United States cannot move to set aside a fraudulent conveyance as its affirmative defense to this quiet title action"). Because Sandra has not offered any persuasive reason why the Government cannot assert fraudulent conveyance as an affirmative defense, the Court finds that the Government has properly pled the issue as an affirmative defense. Consequently, the Government asserted its claim well within any limita-

pers containing the initial figures were not complete because she had not completed her investigation. Furthermore, there is no indication that Ms. Wilson did not take into account the entire amount of all claimed deductions at the time she prepared her initial figures. Finally, Ms. Wilson testified that Don was allowed to deduct all mortgage and

property tax payments and the Government demonstrated that Sandra did not claim any mortgage interest or property tax deductions on her separate returns.

3. Any conclusion of law that is a finding of fact shall be considered as such.

tions period cited by Sandra because its answer was filed on July 15, 1993.[4]

■ Even if a fraudulent conveyance argument could only be asserted as a counterclaim to a quiet title action, the Court would still find that the Government is not barred from asserting its claim. Rule 8(c) of the Federal Rules of Civil Procedure provides that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court on terms, if justice so requires, shall treat the pleading as if there had been a proper designation." Fed.R.Civ.P. 8(c). "The purpose of Rule 8(c) is to give the opposing party notice of the issue and opportunity to argue his position." *Richmond Steel, Inc. v. Legal & Gen. Assurance Soc'y, Ltd.,* 821 F.Supp. 793, 797 (D.Puerto Rico 1993). In *Richmond Steel,* the court held that the plaintiff complied with Rule 8(c) by raising an affirmative defense to a defendant's counterclaim in its amended complaint, even though the affirmative defense should have been asserted by the plaintiff in its answer to the counterclaim, because the defendant had notice of the defense through the amended complaint, the plaintiff's motion for summary judgment, and the proposed pretrial order. *See id.* The Supreme Court applied Rule 8(c) in *Reiter v. Cooper,* 507 U.S. 258, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993), where, as Sandra alleges here, the defendants asserted counterclaims as defenses. Citing Rule 8(c), the Court stated, "it makes no difference

that petitioners may have mistakenly designated their counterclaims ·as defenses. . . ." *Id.* at 263, 113 S.Ct. at 1217.

In this case, the Government's assertion of its fraudulent conveyance claim in its answer met the requirements of Rule 8(c). Sandra had ample notice of the claim because the Government asserted it as its first affirmative defense to Sandra's complaint. In addition, Sandra was also on notice of the claim because it was raised as an issue in the parties' motions for summary judgment. Therefore, Sandra's argument must be rejected.[5]

■ Sandra also argues that the Government may not raise the argument that Don's enhancement of the entireties estate while he was insolvent constituted a fraudulent conveyance because the Government did not raise the issue until shortly before trial. The Court rejects this argument. Although the Government did not raise the specific issue in its affirmative defense, the circumstances under which the issue was presented fall squarely within Fed. R.Civ.P. 15(b), which provides in pertinent part:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even

---

4. Because the Court has concluded that the Government's fraudulent conveyance claim was timely asserted within any of the limitations periods at issue, it is unnecessary for the Court to decide the proper limitations period. Nonetheless, the Court concludes that the proper limitations period is the ten year period set forth in 26 U.S.C. § 6502, because "[i]t is well settled that the United States is not bound by state statutes of limitation ... in enforcing its rights." *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 1020, 84 L.Ed. 1283 (1940); *cf. United States v. Peoples Household Furnishings, Inc.,* 75 F.3d 252, 255–57 (6th Cir.1996) (holding that the United States was not bound by Michigan's statute of limitations for collection of

judgments in suit to enforce judgment on loan where the United States was acting in its sovereign capacity).

5. Although the Government has moved to amend its answer to assert its fraudulent conveyance claim as a counterclaim, the Court finds it unnecessary for the Government to do so because its answer serves the purposes of Rule 8(c). On the other hand, even if the Court concluded that the Government is required to amend its answer to assert a counterclaim, the amendment would relate back to its answer and not be barred by the state of limitations. *See Index Fund, Inc. v. Hagopian,* 91 F.R.D. 599, 604 (S.D.N.Y.1981).

after judgment; but failure so to amend does not affect the result of the trial of these issues. . . .

Fed.R.Civ.P. 15(b); *see also Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1030 (6th Cir.1992); *Carlyle v. United States,* 674 F.2d 554, 556 (6th Cir.1982) (noting that an issue raised and argued at trial and upon which evidence was offered was an issue tried by implied consent); *Agricultural Servs. Ass'n v. Ferry–Morse Seed Co.,* 551 F.2d 1057, 1069 (6th Cir.1977) (finding that failure to amend does not affect resolution of an issue, especially where the opposing party did not object at trial regarding the issue).

■ Rule 15(b) does not require a formal motion to amend the pleadings. *See* Fed.R.Civ.P. 15(b). "All that is required is that the issue be tried by consent, and consent is generally inferred from a failure to object." *Lavean v. Cowels,* 835 F.Supp. 375, 383 (W.D.Mich.1993). While Sandra objects because the Government did not raise the issue until trial, Sandra did not object to the Government raising the issue until after trial. The issue of whether Don was insolvent at the time he made payments which increased the value of the entireties property was set forth in the Joint Final Pretrial Order. Issues 11 through 13 of the controverted issues set forth in paragraph 3 of the Pretrial Order were whether during 1979 through 1985:(i) Don made fraudulent conveyances into the entireties property; (ii) Don contributed approximately $38,000 into the tenancy by the entireties in property tax and mortgage payments; and (iii) Don was insolvent while he was making contributions for the benefit of the entireties. (*See* Joint Final Pretrial Order ¶ 3.) Sandra did not object to the inclusion of these as controverted issues for trial. Moreover, Sandra's counsel did not object at trial to the Government's evidence regarding the amounts contributed by Don to the entireties property from 1979 to 1985. Such evidence could have been relevant only to the Government's contention that Don's payments into the the entireties from 1979 through 1985 while he was insolvent were

fraudulent. Thus, the Court finds that the issue was tried by the implied consent of the parties.

## B. Fraudulent Conveyance

The Government contends that Don's August 28, 1989, conveyance of his interest in the Berwyck Property by quit claim deed for one dollar was a fraudulent conveyance under sections 4 and 7 of the Fraudulent Conveyance Act, M.C.L. §§ 566.14, 566.17. Section 4, which applies to conveyances made by debtors without actual intent to defraud, provides:

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration.

M.C.L. § 566.14. Section 7, which requires proof of actual intent, provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

M.C.L. § 566.17. Thus, a fraudulent conveyance may be proved either by demonstrating that a conveyance was made by a transferor who was either insolvent at the time or rendered insolvent as a result of the conveyance or that the transferor acted with intent to defraud.

■ The party seeking to have a conveyance set aside as fraudulent has the burden of producing evidence to support his claim. *See Dean v. Torrence,* 299 Mich. 24, 35, 299 N.W. 793, 797 (1941). Even though transactions between a husband and wife must be closely scrutinized, the party alleging that the conveyance was fraudulent still bears the burden of proof. *See id.; Nicholson v. Scott,* 50 F.Supp. 209, 212 (E.D.Mich.1943). Actual intent to defraud may be shown through "badges of fraud," or "[s]urrounding cir-

cumstances which usually accompany an intent to hinder, delay or defraud creditors and from which fraud may be inferred...." *Bentley v. Caille,* 289 Mich. 74, 78, 286 N.W. 163, 164 (1939) (en banc). "Badges of fraud" include lack of consideration, a close relationship between transferor and transferee, pendency or threat of litigation, financial difficulties of the transferor, and retention of possession or control by the transferor. *Coleman–Nichols v. Tixon Corp.,* 203 Mich.App. 645, 660, 513 N.W.2d 441, 449 (1994). Such circumstances are not conclusive evidence of fraud, "but may be strong or weak depending upon their nature and number occurring in the same case." *Id.*

Sandra contends that the Government cannot attack the August 28, 1989, conveyance from Don as a fraudulent conveyance for a number of reasons. The Court will discuss each argument separately.

### 1. Can the August 28, 1989, Conveyance By Don Of His Interest In Entireties Property To Sandra Be Set Aside As A Fraudulent Conveyance?

Sandra contends that the Government may not attack Don's August 28, 1989, conveyance of his interest in the Berwyck Property to Sandra as fraudulent under the Fraudulent Conveyance Act because a conveyance of property which is exempt from claims of creditors cannot be a fraudulent conveyance under Michigan law. In support of her position, Sandra cites the definition of "assets" under section 1 of the Fraudulent Conveyance Act which provides that " 'assets' of a debtor means property not exempt from liability for his debts." M.C.L. § 566.11. Sandra contends that because exempt assets are not considered among a debtor's assets under the Fraudulent Conveyance Act, Don's conveyance of his interest in the Berwyck Property could not be fraudulent. The Government responds that sections 4 and 7 of the Fraudulent Conveyance Act are concerned with a "conveyance" by the debtor without limitation to the debtor's "assets" and that the definition of "assets" applies solely for the purpose of determining the debtor's insolvency under section 4.

Sandra's argument finds support in numerous cases, decided both before and after Michigan enacted the Fraudulent Conveyance Act, which have consistently held that creditors have no right to complain of a debtor's disposition of exempt property because such property could not be reached to satisfy debts had it remained in the debtor's hands. *See, e.g., Cross v. Commons,* 336 Mich. 665, 669, 59 N.W.2d 41, 43 (1953) (en banc) (holding that the debtor had "the absolute right" to transfer homestead property where the amount of the exemption exceeded his equity in the homestead); *Turner v. Davidson,* 227 Mich. 459, 462, 198 N.W. 886, 887 (1924) (finding that the exchange by the debtor and his wife of one entireties property for another property in the name of the wife was of no concern to creditors because "[t]he uniform rule of this court has been that creditors are not concerned with the disposition which a debtor makes of his exempt property"), *overruled in part by Glazer v. Beer,* 343 Mich. 495, 498–99, 72 N.W.2d 141, 142–43 (1955); *Bresnahan v. Nugent,* 92 Mich. 76, 81, 52 N.W. 735, 736–37 (1892) (observing that "[i]t has been frequently held that a creditor cannot complain of any disposition which a debtor sees fit to make of exempt property"); *Emerson v. Bacon,* 58 Mich. 526, 527, 25 N.W. 503 (1885) (holding that creditors had no right to complain of the debtor's disposition of exempt property); *cf. Baltrusaitis v. Cook,* 174 Mich.App. 180, 185, 435 N.W.2d 417, 419 (1988) (per curiam) (indicating that disclaimer by beneficiary of interest in life insurance proceeds which was exempt from creditors' claims was not a fraudulent conveyance under the Fraudulent Conveyance Act). Because Don's creditors, including the I.R.S., could not attach Don's interest in the Berwyck Property to satisfy Don's individual debts, *see Craft,* 140 F.3d at 642–43, Don's conveyance of his interest to Sandra could not have constituted a fraud upon his creditors because the property was beyond their reach.

Other cases, without explicitly holding that a spouse's conveyance of an interest in entireties property to the other spouse is not a fraudulent conveyance, support this result. Thus, in *Farrell v. Paulus*, 309 Mich. 441, 15 N.W.2d 700 (1944) (en banc), the court held that the remedy of setting aside a quitclaim deed by a husband to his wife of his interest in entireties property would be ineffective, because it would afford the creditor no relief. The court observed:

> The validity of the quitclaim deed is attacked by plaintiff, but if it were set aside the title would again be in the name of Paulus and wife as tenants by the entirety and plaintiff would not be aided thereby because neither the land nor the rents and profits therefrom would be subject to levy on execution for the sole debt of the husband.

*Id.* at 445, 15 N.W.2d at 702; *see also Morris v. Wolfe*, 48 Mich.App. 40, 43, 210 N.W.2d 16, 17 (1973) (stating that even if fraud were proven, title to the entireties property would revert to husband and wife and could not be used to satisfy a judgment rendered against only one spouse). Thus, a conveyance cannot be set aside where title would merely revert to husband and wife as tenants by the entireties. Under the facts of this case, title to the Berwyck Property would revert to Don and Sandra as tenants by the entireties and, because Don predeceased Sandra, sole title would pass to Sandra as the survivor.

The Government cites *Lasich v. Estate of Wickstrom (In re Wickstrom )*, 113 B.R. 339 (Bankr.W.D.Mich.1990) as support for its argument that the Court should ignore the so-called "no harm-no foul" rule found in Michigan case law. However, the Court finds *Wickstrom* both factually and legally distinguishable from this case. *Wickstrom* differs on its facts from this case because

the conveyances of entireties property in that case were from the debtor and his spouse to the debtor's parents and the debtor's son. *See id.* at 341. While the facts in *Wickstrom* do not materially distinguish the case, the legal issue does. The specific question was whether the bankruptcy trustee could avoid a prepetition transfer of entireties property either as a preference or a fraudulent conveyance pursuant to 11 U.S.C. §§ 547(b) and 548(a). *See id.* at 343. The bankruptcy court rejected the "no harm-no foul" analysis adopted in *Cross* and other Michigan cases because, under the Bankruptcy Code, all property interests of a debtor, including those in entireties property, are included in the bankruptcy estate, whereas such interests were not part of the bankruptcy estate under the Bankruptcy Act of 1898, which governed the court's analysis in *Cross*. *See id.* at 350. Moreover, although the court found that creditors have rights in potentially exempt property, its reasoning was based upon the trustee's right to sell the debtor's interest in entireties property which the debtor fails to exempt. *See id.* at 347. Here, the same considerations do not apply because a bankruptcy trustee is not seeking to recover property under the Bankruptcy Code. Therefore, under Michigan law, the conveyance from Don to Sandra did not, by itself, constitute a fraudulent conveyance.[6]

▮ Even though the conveyance from Don to Sandra was not fraudulent, the Government may still be entitled to relief. An exception to the "no harm-no foul rule" exists where the debtor, while insolvent, places non-exempt funds beyond the reach of his creditors by enhancing the entireties property. Michigan courts have "consistently held that during insolvency entireties estates cannot be created or enhanced at the expense of creditors and that relief may be granted without reference to any actual fraudulent intent." *Glazer v. Beer,*

---

**6.** *Ash v. Ash,* 280 Mich. 198, 273 N.W. 446 (1937) (en banc), cited by the Government, only dealt with the question of whether a conveyance of an interest in entireties property by one spouse to the other was procured through fraud. That case does not provide a basis for a creditor of one spouse to attack a conveyance of an entireties interest from one spouse to the other on the basis of fraud.

343 Mich. 495, 498, 72 N.W.2d 141, 142 (1955) (en banc); *see also La Bour v. Bergin,* 334 Mich. 437, 439, 54 N.W.2d 710, 711 (1952); *Morris,* 48 Mich.App. at 43, 210 N.W.2d at 17. In *McCaslin v. Schouten,* 294 Mich. 180, 292 N.W. 696 (1940) (en banc), the court held that payments made by the debtor while he was insolvent which reduced the balance of his mortgage were fraudulent regardless of actual intent. The court stated:

> Being insolvent at the time and indebted to the bank, in so far as Mr. Schouten invested or used his individual funds to pay the mortgaged debt on the entireties property and thereby placed or attempted to place his individual property beyond the reach of his creditors, the transaction constituted a fraud in law. Such payment cannot be held proper on the theory that Mr. Schouten was indebted to the mortgagee and had a right to pay that creditor in preference to others. Instead the payment on the mortgage debt was tantamount to an investment of Mr. Schouten's funds in property which he and his wife would hold as tenants by the entireties; and thus he would hinder and possibly prevent his creditors from reaching the funds invested by him . . . .

*Id.* at 185, 292 N.W. at 699.

■ The parties have stipulated that Don was insolvent during the period from April 15, 1980 through August 28, 1989, when he was indebted to the I.R.S. for delinquent taxes. In addition, the Government has presented evidence that during this period, Don made property tax and mortgage payments on the Berwyck Property which reduced the principal balance of the mortgage and thereby enhanced the value of the entireties property. Thus, unless otherwise precluded, the Government is entitled to a lien on Don's share of the proceeds of the sale of the Berwyck Property equal to the amount by which the value of the entireties property was enhanced by payments made by Don during the period of insolvency. *See La Bour,* 334 Mich. at 440, 54 N.W.2d at 712.

### 2. Does Don's Discharge In Bankruptcy Foreclose The Government From Seeking Relief?

■ Sandra contends that the Government is precluded from asserting a fraudulent conveyance claim because Don's debt was discharged, as was the I.R.S. lien, which the Sixth Circuit has held did not attach to the Berwyck Property. The Government relies on the case of *Morris v. Wolfe,* 48 Mich.App. 40, 210 N.W.2d 16 (1973), as support for its right to pursue its claim, even after the debt has been discharged in bankruptcy. As Sandra points out, however, *Morris* differs from this case in certain respects. In that case, the plaintiff received a worker's compensation award on January 28, 1963, and a partial summary judgment was entered against the defendant husband in February 1967. An execution on the judgment was issued on December 31, 1969, and notice of levy was recorded on March 4, 1970, against property originally held by the defendants as tenants by the entireties, but which was transferred to the wife when the husband conveyed his interest by quit claim deed on September 23, 1966. The husband then filed a petition in bankruptcy and received a discharge on August 17, 1971. The court held that because the plaintiff was a judgment creditor whose lien had not been affected by the defendant's bankruptcy discharge [7], the plaintiff was not precluded from pursuing fraudulently conveyed property in state court.

> It is fundamental that a discharge in bankruptcy is personal in nature and releases only the bankrupt's personal liability. This discharge affects the underlying debts of secured and unsecured creditors alike but does not dispose of a valid lien not avoided by the bankruptcy act. for this reason, we conclude that a

---

7. It is unclear from the court's opinion whether the judgment was only against the husband. If that was the case, it seems to this Court that the *Morris* court's conclusion that the lien attached to the entireties property was wrong in light of the Sixth Circuit's holding in this case.

lien creditor may pursue the attached collateral in a state court subsequent to the debtor's discharge in bankruptcy. *Id.* at 45–46, 210 N.W.2d at 18.

Sandra points out that *Morris* does not apply in this case because the Government is not a judgment creditor and its lien did not attach to the Berwyck Property and was therefore discharged. It is true that the *Morris* court drew a distinction between secured and unsecured creditors. *See id.* at 44–45, 210 N.W.2d 16,. However, much of the court's discussion was dicta and was also based upon the Bankruptcy Act of 1898, under which fraudulently conveyed property was automatically included in the bankruptcy estate. Although as far as this Court can tell, no Michigan court has addressed the issue, the court in *Dixon v. Bennett*, 72 Md.App. 620, 531 A.2d 1318 (1987), held that a debtor's discharge in bankruptcy did not prevent an unsecured creditor from bringing a subsequent action under the Uniform Fraudulent Conveyance Act. *See id.* at 637–38, 531 A.2d at 1326–27. The court's reasoning explains why *Morris*, to the extent it can be read to preclude claims by unsecured creditors, is incorrect:

> The discharge provision of the Bankruptcy Code, 11 U.S.C. § 524, consistent with fundamental bankruptcy policy, provides the debtor with a fresh start free from the burdens of preexisting liabilities. Under § 524, the discharge only (i) extinguishes personal liability of the debtor; and (ii) prevents creditors whose claims arose pre-bankruptcy from any actions to impose personal liability on the debtor. 11 U.S.C. § 524 (1978). Section 524(e) expressly provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." § 524(e).
>
> Under § 16 of the Bankruptcy Act of 1898, Ch. 541, 30 Stat. 544, 550 (1898), the limitation of discharge provision restricted actions to those against co-debtors, guarantors, or other sureties. The language of § 524(e) of the 1978 Bankruptcy Code reveals a congressional intent to broaden the rights of creditors, by preserving their actions against third parties and their property, and to restrict the effect of a discharge solely to a release of the personal liability of the debtor.
>
> In *Kathy B. Enterprises, Inc. v. United States*, 779 F.2d 1413 (9th Cir.1986), a debtor fraudulently transferred assets to a third party. The debtor was eventually discharged. Subsequently, the Internal Revenue Service attempted to collect delinquent taxes owed by the debtor by seizing the proceeds the third party was receiving from the sale of the debtor's assets. The I.R.S. claimed that it could collect the taxes in this way because under Illinois law the transfers had been fraudulent. The third party argued that the debtor's discharge barred the I.R.S.'s cause of action. The Court, relying on the change in the statutory language, held that under § 524(e) the I.R.S. could bring a cause of action against a fraudulent transferee despite the debtor/taxpayer's discharge. *Kathy B.*, 779 F.2d at 1415. We agree with the 9th Circuit. In the case sub judice, appellant did not seek to impose personal liability on the debtor but brought her cause of action against the fraudulent transferee. We believe appellant's claim is precisely the type contemplated by the expanded scope of § 524(e).

*Id.* The holding in *Dixon* has been followed by courts in other states in addressing the same question under those states' versions of the Uniform Fraudulent Conveyance Act. *See Citizens Bank of Mass. v. Callahan*, 38 Mass.App.Ct. 702, 705–06, 653 N.E.2d 600, 602–03; *J.P. Castagna, Inc. v. Castagna*, No. CV 92 0523960, 1995 WL 225473, at *2–3 (Conn.Super.Ct. Apr. 7, 1995) (mem.op.). This Court finds the *Dixon* court's reasoning persuasive and therefore concludes that the Government is not barred from pursuing its claim.

### 3. Is The Government's Right To Relief Affected By Don's Death?

Sandra argues that Don's death precludes the Government from recovering

any of the proceeds of the sale of the Berwyck Property because even if the August 28, 1989, conveyance was set aside, title to the property would revert back to Don and Sandra as tenants by the entireties and, as a result of Don's death, would then go to Sandra as the survivor. While this argument would be applicable if the Court found that the conveyance itself was fraudulent, it does not prevent the Government from recovering the amounts which Don paid to enhance the entireties property while he was insolvent.

### 4. How Much Is The I.R.S. Entitled To Recover?

■ The Government asserts that it is entitled to recover all mortgage and property tax payments which Don made from April 15, 1980 through 1985, which enhanced the value of the entireties estate, as well as accretions in Don's share of the net equity, based either upon payments which reduced the mortgage balance or market forces which increased the value of the property. The Government is not seeking to recover mortgage or property tax payments made after 1985 because those payments were made with Sandra's funds.

The cases cited by the Government do not support its position. The creditors in those cases were allowed to recover only the amount by which value of the equity was increased as a result of payments that somehow put money into the hands of the debtors, either directly or indirectly, and beyond the reach of creditors. For example, in *Dunn v. Minnema*, 323 Mich. 687, 36 N.W.2d 182 (1949) (en banc), the court held that the creditor was entitled to a lien in the amount of $3,305, which represented the total amount of payments on the principal balance of the land contract by the debtor after the date he became insolvent.

See *id.* at 696, 36 N.W.2d at 185. In *Glazer*, the court imposed a lien on the entireties property equal to the value of improvements which the debtor used to remodel a barn on the property for use in his business. *See Glazer*, 343 Mich. at 496–97, 72 N.W.2d at 141–42. In *La Bour*, the court awarded the trustee of the defendant's bankruptcy estate a lien in the amount of $2,300, representing payments which the defendant had made to reduce the balance of the mortgage. *See La Bour*, 334 Mich. at 438, 54 N.W.2d at 711. Similarly, in *McCaslin*, the court awarded the creditor a lien in the amount of $5,404, the amount of the defendants' equity in their entireties property. *See McCaslin*, 294 Mich. at 180, 292 N.W. at 700.

To this Court's knowledge, no Michigan court has ever held that the interest component of mortgage payments or property tax payments enhance entireties property to the detriment of creditors. The reason is obvious: such payments do not increase a debtor's equity or constitute a fraud on creditors. Rather, payments of interest and property taxes are no more than payments made by the debtor to certain creditors in preference over other creditors, which the law allows debtors to do. As anyone who has ever had a thirty-year mortgage can attest, substantial payments in the first several years covering interest, principal, property taxes, and insurance, contribute only slightly in reducing the amount of the debt. Thus, in *Pearce v. Micka*, 62 Md.App. 265, 489 A.2d 48 (1985), the court held "that payment of interest, taxes and insurance premiums did not constitute fraudulent conveyances under the Uniform [Fraudulent Conveyance Act]." *Id.* at 275, 489 A.2d 48. The court in *Pearce* distinguished *McCaslin* on the basis that the payments in *"McCaslin* did not involve monthly mortgage payments which included interest and funds to be escrowed for payment of taxes and insurance premiums." [8] *Id.* at 274, 489 A.2d at 53.

---

**8.** Likewise, there is no arguable basis for awarding the Government any increase in equity due to the general increase in property values. The value of value of the Berwyck Property would have increased regardless of whether payments were made to reduce the principal balance of the mortgage.

The evidence presented by the Government shows that from 1980 through 1985, Don and Sandra made a total of $19,692 in mortgage payments, which included $12,999 in interest and $6,693 in principal. Thus, during the period in question, payments made using Don's funds reduced the outstanding balance of the mortgage and constituted a fraudulent conveyance in the amount of $6,693. Accordingly, the Government is entitled to $6,693 of the escrowed sales proceeds from the Berwyck Property.

### Conclusion

For the foregoing reasons, the Court concludes that the August 28, 1989, conveyance by Don to Sandra of his interest in the Berwyck Property was not a fraudulent conveyance, but that payments made by Don from April 15, 1980 through December 31, 1985, which reduced the principal balance of the mortgage in the amount of $6, 693 did constitute a fraudulent conveyance. Therefore, the Government is entitled to recover that amount from the escrowed funds from the sale of the Berwyck Property.

A judgment consistent with these Findings of Fact and Conclusions of Law will be entered.

### Judgment

In accordance with the Findings of Fact and Conclusions of Law issued this date,

**IT IS HEREBY ORDERED** that the United States is awarded $6,693 of the escrowed sales proceeds from the Berwyck Property, plus interest on that amount from October 26, 1995.

**IT IS FURTHER ORDERED** that the remainder of the escrowed sales proceeds plus interest shall be delivered to the plaintiff.